UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA


ALEXANDER A. STRATIENKO, M.D.,    )
    )
    Plaintiff,    )
    )
v.    )    No. 1:07-CV-258
    )    (COLLIER/SHIRLEY)
CHATTANOOGA-HAMILTON COUNTY    )
HOSPITAL AUTHORITY, et al.,    )
    )
    Defendants.    )


## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the referral of the Honorable Curtis L. Collier, United States District Judge, for disposition of the following motions: Defendants Mutter's, Fisher's, and Shumaker's Motion for Protective Order [Doc. 21] and Motion to Quash [Doc. 56]; Defendant Monroe's Motion for Protective Order [Doc. 35]; Defendant Twiest's Motion for Protective Order [Doc. 39] and Motion to Quash [Doc. 60]; Plaintiff Stratienko's Objections to Proposed Order [Doc. 11], Motion to Compel Chattanooga-Hamilton County Hospital Authority and Mel Tweist, M.D. to Produce Documents Previously Requested [Doc. 45], Motion to Compel Van Steven Monroe, M.D. to Produce Documents Previously Requested [Doc. 46], Motion to Compel Cardiovascular Group, P.C. to Produce Documents Previously Requested [Doc. 47], Motion to Compel Nita Shumaker to Respond to Deposition Questions [Doc. 48], Motion to Compel CHCHA to Produce Documents and Things [Doc. 49], Motion to Compel CHCHA to Respond to Discovery [Doc. 53], and Motion for Sanctions against Chattanooga-Hamilton County Hospital Authority [Doc. 54]; and Defendant Chattanooga-

Hamilton County Hospital Authority's Motion for Protective Order. [Doc. 79]

This civil action came before the Court on February 25, 2008, for a hearing on the instant motions. On March 3, 2008, the parties filed their post-hearing briefs. [Docs. 107, 109, 110, 111] On March 6, 2008, the plaintiff filed an additional supplement. [Doc. 112] Additionally, Defendant Chattanooga-Hamilton County Hospital Authority [Doc. 115] and Defendants Mutter, Fisher, and Shumaker [Doc. 125] have supplemented their motions for protective orders, filed March 25, 2008, and March 31, 2008, respectively. After the filing of the post-hearing briefs, the Court took the matter under advisement, and the instant motions are now ripe for adjudication. The Court will address each of the motions in turn.

## I. Motions for Protective Orders [Docs. 21, 35, 39, 79]

In their motions for protective orders, the defendants all move the Court to preclude the plaintiff from obtaining information in this matter through the Tennessee Open Records Act ("TORA"). The defendants contend that the records the plaintiff seeks are privileged, and further argue that the plaintiff should not be able to side step the discovery process by resorting to the TORA. The defendants contend that the plaintiff propounded TORA requests to non-parties University of Tennessee College of Medicine ("UTCOM") and the Tennessee Physicians' Quality Verification Organization ("TPQVO"). The defendants also contend that the records produced by UTCOM contained documents which were protected under the Tennessee Peer Review Statute ("TPRS"), codified at Tennessee Code Annotated § 63-6-219, and other privacy statutes.[1] Additionally, on March 21, 2008, defendant Chattanooga-Hamilton County Hospital Authority

---

[1]UTCOM received two relevant TORA requests. UTCOM produced documents in response to the first request, dated September 7, 2007, but, to the Court's knowledge, has not responded to the second request, dated December 3, 2007. [Doc. 34, Affidavit of Jane Clay]

("CHCHA") was served with a similar TORA request. The plaintiff opposes the motion, arguing that the request is proper and that it is the role of the producing party to ensure that no privileged documents are produced, not the defendants in this matter.

The TORA provides, in pertinent part, that:

> Except as provided in § 10-7-504(f), all state, county and municipal records and all records maintained by the Tennessee performing arts center management corporation, except any public documents authorized to be destroyed by the county public records commission in accordance with § 10-7-404, shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

Tenn. Code Ann. § 10-7-503(a).

In discussing the TORA, the Tennessee Supreme Court has noted that:

> Providing access to public records promotes governmental accountability by enabling citizens to keep track of what the government is up to. Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 171-72 (2004); Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc., 87 S.W.3d 67, 74-75 (Tenn. 2002). Recognizing the importance of providing the public access to governmental records, the Tennessee General Assembly has enacted statutes that clearly favor the disclosure of public records. Tennessean v. Elec. Power Bd., 979 S.W.2d 297, 305 (Tenn. 1998); Swift v. Campbell, 159 S.W.3d 565, 570 (Tenn. Ct. App. 2004). These statutes contain a presumption that the records listed in Tenn. Code Ann. § 10-7-301(6) (Supp. 2007) and Tenn. Code Ann. § 10-7-503 are to be open to the public, State v. Cawood, 134 S.W.3d 159, 165 (Tenn. 2004), and they direct the courts to construe the statutes broadly to assure the "fullest possible access" to public records. Tenn. Code Ann. § 10-7-505(d). Thus, unless it is clear that a record or class of records is legally exempt from disclosure, the requested record must be produced. Memphis Publ'g Co. v. City of Memphis, 871 S.W.2d 681, 684 (Tenn. 1994).

> It may very well be that the General Assembly neither intended nor anticipated that the public records statutes they enacted would be used by persons litigating with government entities to

3

obtain records that might not be as readily available through the rules of discovery.  <u>Swift v. Campbell</u>, 159 S.W.3d at 576.  However, at present, neither the discovery rules nor the public records statutes expressly limit or prevent persons who are in litigation with a government entity or who are considering litigation with a government entity from filing petitions under Tenn. Code Ann. § 10-7-505(a) seeking access to public records relevant to the litigation.

<u>Konvalinka v. Chattanooga-Hamilton County Hospital Authority</u>, No. E2006-00064-SC-R11-CV, 2008 Tenn. LEXIS 103, at *33-34 (Tenn. Feb. 13, 2008).  The <u>Konvalinka</u> court, citing the United States Supreme Court, further noted that:

> Regarding the Federal Freedom of Information Act, the United States Supreme Court has stated explicitly that, although the Act was not intended to be used as a discovery tool, one's status as a litigant neither diminishes nor enhances the right to public information. <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978). The controlling question is not who requests the information but whether the information ought to be public.  <u>U.S. Dep't of Justice v. Reporter's Comm. for Freedom of the Press</u>, 489 U.S. 749, 771-72 (1989).

<u>Konvalinka</u>, 2008 Tenn. LEXIS 103, at *34-35 n.24.  The <u>Konvalinka</u> court also noted that "[a] growing number of courts, construing public records statutes similar to ours, have decided that persons should not be denied access to public records solely because they are involved, or may be involved, in litigation with a governmental entity."  <u>Id.</u> at *34-35 n.25 (citing <u>Leucadia, Inc. v. Applied Extrusion Techs., Inc.</u>, 998 F.2d 157, 167-68 (3d Cir. 1993); <u>Jackson v. First Fed. Sav. of Ark.</u>, 709 F. Supp. 887, 889 (E.D. Ark. 1989); <u>Bolm v. Custodian of Records of the Tucson Police Dep't</u>, 969 P.2d 200, 204-05 (Ariz. Ct. App. 1998); <u>Kentner v. Ind. Pub. Employers' Plan, Inc.</u>, 852 N.E.2d 565, 575 (Ind. Ct. App. 2006); <u>Ky. Lottery Corp. v. Stewart</u>, 41 S.W.3d 860, 863-64 (Ky. Ct. App. 2001); <u>Taylor v. Lansing Bd. of Water & Light</u>, 725 N.W.2d 84, 87-88 (Mich. Ct. App. 2006); <u>N.J. Builders Ass'n v. N.J. Council on Affordable Hous.</u>, 915 A.2d 23, 32 (N.J. Super. Ct.

App. Div. 2007); <u>M. Farbman & Sons, Inc. v. N.Y. City Health & Hosps. Corp.</u>, 464 N.E.2d 437, 438-39 (N.Y. 1984); <u>Cavey v. Walrath</u>, 598 N.W.2d 240, 243 n.4 (Wis. Ct. App. 1999)).

The <u>Konvalinka</u> court, which was addressing the propriety of sanctions against attorney Konvalinka for an alleged violation of a court ordered stay of proceedings in the instant action prior to its removal to this Court, found that the lower court's imposition of sanctions was not appropriate, and thus concluded that the <u>Konvalinka</u> case did "not provide an appropriate vehicle to determine whether persons who are in litigation with a governmental entity can be prevented from using the public records statutes to obtain information relevant to the litigation.  The resolution of that important issue must await another day."  <u>Konvalinka</u>, 2008 Tenn. LEXIS 103, at *36.  Thus, the resolution of that issue now falls to this Court.

This Court finds, as noted by the <u>Konvalinka</u> court and the United States Supreme Court, that "one's status as a litigant neither diminishes nor enhances the right to public information," <u>Id.</u> at *34-35 n.24, and thus this Court holds that the fact that an individual is a party to litigation against a government agency does not, on its own, preclude that individual from relying on the TORA.

However, not all information is available under the TORA, but rather, only information not otherwise protected under the law.  Given that the TORA specifically establishes the procedures for resolving disputes over the TORA's application, the Court finds that this litigation is not the proper avenue or venue for the determination of whether, or to what extent,  CHCHA or the non-parties should respond to the pending TORA requests.  <u>See</u> Tenn. Code Ann. § 10-7-505 (setting forth the procedure for review of denial of a TORA request).   Nor does it appear that any of the defendants besides CHCHA have any standing, in this federal court, to object to the request.  Further, because the information sought is not being sought pursuant to any Federal Rules of Civil Procedure

governing discovery, nor pursuant to any discovery mechanisms under the Rules, the defendants request for a protective order from this Court is not appropriate. If, however, the documents in question are protected under the TPRS, as the defendants contend, then those documents would necessarily fall within the "unless otherwise provided for by law" exception and disclosure under the TORA would not be required.[2] Such a determination, however, must be left to the entity faced with the TORA request, with any denial subject to review by the appropriate state court.

Additionally, the Court notes that the Federal Rules of Evidence govern the introduction of any evidence in this litigation. Thus, no matter the source of the evidence, it must be admissible under the Rules before it may be used at trial in this litigation. However, should any party seek to utilize inadmissible evidence or clearly privileged material in this litigation (in deposition, discovery, filings, hearings, or at trial ), the opposing party may make the appropriate objection and/or motion at that time. The Court is cognizant of the defendants' contention that the plaintiff has obtained allegedly privileged information in this matter. If the defendants' contentions are true, then the Court cannot un-ring that bell. However, the Court can, and will, ensure that any evidence used in this matter complies with the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

Accordingly, for the reasons set forth above, the Court finds that the defendants' motions for protective orders [Docs. 21, 35, 39, 79] are not well-taken, and the same are hereby **DENIED**. The Court will not preclude the plaintiff from exercising his rights under the TORA, nor will the Court issue an advisory opinion as to whether the TORA applies to the records sought.

---

[2]In making this statement the Court in no way rules whether the documents are, or are not, privileged, but instead merely notes that documents falling under the TPRS are protected under Tennessee law.

II.     **Objections and Motions Related to the Order of Judge Schulten, Dated November 13, 2008 [Docs. 11, 45, 46, 47, 48, 49]**

On September 14, 2007, before this action was removed from the Circuit Court of Hamilton County to the instant Court, the parties appeared before the Honorable Judge Schulten for a hearing on several motions. Judge Schulten ruled on the pending motions during the hearing, but her oral ruling was not memorialized in written form until November 13, 2007. [Doc. 66, Exhibit A] However, this matter was removed to federal court on October 29, 2007, and thus Judge Schulten's written Order was entered after the Circuit Court of Hamilton County had lost jurisdiction. The circumstances of the November 13, 2007, Order are further complicated by the fact that the plaintiff did not join in the agreed order, instead objecting to the proposed language. Subsequent to the entry of the Order by Judge Schulten, plaintiff filed his Objections [Doc. 11] to the Order with this Court. Given the complications surrounding the November 13, 2007, Order,  the plaintiff also filed with this Court the motions to compel previously addressed in the disputed Order. [Docs. 45, 46, 47, 48, 49]

During the February 25, 2008, hearing before the undersigned, the parties reached an agreement as to many provisions of the disputed November 13, 2007, Order. However, during the hearing the parties were unable to reach agreement as to paragraphs 2(a), 2(c), and 5(b). The Court Ordered [Doc. 103] the parties to file post-hearing briefs regarding the remaining disputed issues, which the parties have done. [Docs. 107, 109, 110, 111, 112] Given the disputed nature of the November 13, 2007, Order, the Court will address each relevant paragraph of the disputed Order in turn. The Court will begin each section by setting forth the language of the disputed Order.

A.    ¶ 2(a)

Defendants are to compile a list of all telephone numbers available to Defendants for Dr. Mel Twiest, Dr. Dan Fisher, Dr. Mitch Mutter, Dr. Roland Gray, Dr. Erik Conn, Dr. Stratienko, Dr. Tom Peterson, Denise Ray, Pat Eller, Jim Brexler, and Craig Cummings (the "List"). Thereafter, the List is to be provided to counsel for Nita Shumaker and counsel for Plaintiff; and

With respect to ¶ 2(a), the plaintiff seeks to add the names of attorneys Randy Chennault, Fred Moore, and Joe White to the List. During the hearing, the parties could not reach agreement as to these additions. However, after the hearing, the parties agreed to include the three additional names to the List. [Doc. 107] Accordingly, the plaintiff's objection to ¶ 2(a) is **SUSTAINED** and ¶ 2(a) is hereby **AMENDED** such that the List shall also include the names Randy Chennault, Fred Moore, and Joe White.

B.    ¶ 2(b)

Galen Medical Group, P.C., is directed to obtain and produce Dr. Shumaker's cell phone records from September 15, 2004 to September 21, 2004. However, Dr. Shumaker may redact any phone numbers from her cell phone records that are not included on the List.

During the hearing, the parties agreed that ¶ 2(b) should be amended such that Dr. Shumaker shares responsibility for ensuring that the records are produced. Given that Galen Medical Group, P.C. is not a party to this litigation, but Dr. Shumaker is a party, the Court finds it appropriate to place the responsibility for obtaining the records upon Dr. Shumaker. Accordingly, the plaintiff's objection to ¶ 2(b) is **SUSTAINED** and ¶ 2(b) and is **AMENDED** to read as follows: "Dr. Shumaker is directed to obtain and produce her cell phone records from September 15, 2004 to September 21, 2004. However, Dr. Shumaker may redact any phone numbers from her cell phone records that are not included on the List."

C.    ¶ 2(c)

The requests for answers to questions propounded to Dr. Shumaker relative to the actions of Galen Medical Group and/or Erlanger concerning Dr. Calvin Bell are held in abeyance.

With respect to ¶ 2(c), the Court notes that, during the December 1, 2004, deposition of Dr. Shumaker, attorney Chris Helton, attorney to Galen Medical Group, objected to any questioning relating to the action of Galen Medical Group concerning Dr. Calvin Bell, alleging privilege. Given that Galen Medical Group is not a party to this litigation, and given that Galen Medical Group was not represented at the February 25, 2008, hearing before the undersigned, the Court, in an abundance of caution, will not rule on this issue at this time. The Court notes that, since the deposition in question, the Tennessee Supreme Court has ruled on the scope of the Tennessee Peer Review Statute. Stratienko v. Chattanooga-Hamilton County Hosp. Auth., 226 S.W.3d 280 (Tenn. 2007). Accordingly, the plaintiff is **DIRECTED** to meet and confer with defense counsel, as well as counsel for Galen Medical Group, to determine whether, in light of that jurisprudence, the parties and Galen Medical Group continue to assert their objections. If so, then the parties are **DIRECTED** to contact chambers to schedule a hearing to resolve those objections, so that Galen Medical Group will have the opportunity to be heard by the Court.

D.    ¶ 3(a)

Erlanger is directed to produce Brenda Townsend's complete file referenced in Dr. Twiest's deposition.

During the hearing, the parties agreed that the requested file has been produced and that the issue is now moot. Accordingly, the plaintiff's objection to ¶ 3(a) is **OVERRULED as moot**.

E.    ¶ 3(b)

Erlanger is to ascertain whether Pat Eller maintained a log or record of telephone calls received on September 16, 2004. To the extent that such records exist, Erlanger and Dr. Mel Twiest shall produce the same to Plaintiff. However, Erlanger may redact any information contained in such records that does not pertain to the altercation between Dr. Stratienko and Dr. Monroe on September 16, 2004.

During the hearing, the parties agreed that ¶ 3(b) should be amended such that only those records not pertaining to the individuals on the List could be redacted. Accordingly, the plaintiff's objection to ¶ 3(b) is **SUSTAINED** and ¶ 3(b) is **AMENDED** such that the last sentence of ¶ 3(b) shall state "However, Erlanger may redact any information contained in such records that does not pertain to the individuals set forth on the List."

F.    ¶ 3(c)

Erlanger and Dr. Mel Twiest previously complied with Plaintiff's request to produce any documentation of Mel Twiest's conversations with Wanda Perry referenced in Dr. Mel Twiest's deposition by disclosing Dr. Mel Twiest's entire file.

During the hearing, plaintiff's counsel withdrew his objection to ¶ 3(c), stating that the objection was now moot. Accordingly, the plaintiff's objection to ¶ 3(c) is hereby **OVERRULED as moot**.

G.    ¶ 3(d)

Erlanger is to produce cell phone records for Dr. Mel Twiest from September 15, 2004 to September 21, 2004 and December 10, 2004 to December 16, 2004, to the extent available. However, Defendants may redact from such records any phone numbers that are not included on the List.

During the hearing, the parties agreed that the ¶ 3(d) should be amended such that, rather than indicating that the documents should be produced "to the extent available," that the order should instead indicate that the records should be produced, and if unavailable, the producing party should explain why the records are unavailable. Accordingly, the plaintiff's objection to ¶ 3(d) is

**SUSTAINED** and ¶ 3(d) is **AMENDED** such that it shall now state: "Erlanger is to produce cell phone records for Dr. Mel Twiest from September 15, 2004 to September 21, 2004 and December 10, 2004 to December 16, 2004. Should any of the records be unavailable, Erlanger shall provide a list describing the time period for which the records are unavailable and explain why the records could not be produced. However, Defendants may redact from such records any phone numbers that are not included on the List."

> H.      ¶ 3(e)
>
> To the extent available, Erlanger is to produce copies of e-mail communications sent or received by Dr. Mel Twiest to or from the following individuals: Dr. Mel Twiest, Dr. Dan Fisher, Dr. Mitch Mutter, Dr. Roland Gray, Dr. Stratienko, Denise Ray, Jim Brexler, Craig Humphreys, Pat Eller and Tom Peterson, from September 15, 2004 to September 21, 2004.

During the hearing, the parties agreed that the "To the extent available" language should be removed. Accordingly, the plaintiff's objection to ¶ 3(e) is **SUSTAINED** and ¶ 3(e) is **AMENDED** such that the phrase "To the extent available" is hereby deleted.

> I.      ¶ 3(f)
>
> Erlanger and Dr. Mel Twiest are directed to respond in writing as to whether they are in possession of any written drafts of the Request of Corrective Action that was directed to Dr. Stratienko, including the versions before and after revisions by defendant Chattanooga-Hamilton County Hospital Authority's counsel. If such written drafts exist, the same are to be produced to Plaintiff.

During the hearing, the parties agreed that the order should also apply to electronic drafts of the relevant document, not just "written" drafts. Accordingly, the plaintiff's objection to ¶ 3(f) is **SUSTAINED** and ¶ 3(f) is **AMENDED** such that it shall now state: "Erlanger and Dr. Mel Twiest are directed to respond in writing as to whether they are in possession of any drafts, in whatever form or medium, of the Request of Corrective Action that was directed to Dr. Stratienko, including

11

the versions before and after revisions by defendant Chattanooga-Hamilton County Hospital Authority's counsel. If such drafts exist, the same are to be produced to Plaintiff."

J. ¶ 4(a) through 4(c)

Plaintiff had no objections to ¶¶ 4(a) - (c).

K. ¶ 4(d)

Dr. Monroe is to produce his cell phone records from September 15, 2004 to September 21, 2004.

During the hearing, the parties agreed that Dr. Monroe could redact records relating to any patients or family members of Dr. Monroe, but that any other redactions must be explained. Accordingly, the plaintiff's objection to ¶ 4(d) is **SUSTAINED** and ¶ 4(d) is hereby **AMENDED** such that it now states: "Dr. Monroe is to produce his cell phone records from September 15, 2004 to September 21, 2004. However, Dr. Monroe may redact from such records the phone numbers of any of the patients or family members of Dr. Monroe. Should the defendant redact any other information from the records, the defendant shall provide the plaintiff with an explanation, or, when appropriate, privilege log, for the additional redactions."

L. ¶ 4(e)

Subject to any objections following receipt by Dr. Monroe of the below-referenced CPT Codes from Plaintiff, Dr. Monroe is directed to produce a list of all interventional peripheral vascular procedures Dr. Monroe has performed while practicing in Hamilton County, from the time that he began practicing at Erlanger until the end of 2004 calendar year. These procedures will be identified by CPT code by Plaintiff's counsel.

During the hearing, the plaintiff withdrew his objection to ¶ 4(e). Accordingly, the plaintiff's objection to ¶ 4(e) is hereby **OVERRULED as moot**.

**M.    ¶ 5(a)**

Subject to any objections following review of the requested notes, Cardiovascular Group P.C. is to produce any notes made by Paul Farmer relative to his conversation with Dr. Van Steven Monroe during which they discussed the September 16, 2004 incident which is the subject of this case.

During the hearing, the parties agreed that the "Subject to any objections" portion of ¶ 5(a) should be removed. However, the Court notes that Cardiovascular Group P.C. is not a party to this suit, nor did a representative of Cardiovascular Group P.C. appear during the February 25, 2008, hearing before the undersigned.[3]  In an abundance of caution, because this issue has not been sufficiently raised or briefed, and because this Court may be called upon to enforce such production, the Court will not, at this time, direct a non-party to produce documents without some proof that the non-party has been given proper notice of the request and an opportunity to be heard by the Court. If Cardiovascular Group P.C., or a party defendant, are unwilling to provide the documents at issue voluntarily, then plaintiff has leave to seek the production of the documents pursuant to the Federal Rules of Civil Procedure.  If a Subpoena for the relevant documents has already issued from this Court, then plaintiff may file a motion to compel as to that Subpoena.  Accordingly, the plaintiff's objection to ¶ 5(a) is **OVERRULED without prejudice**.

**N.    ¶ 5(b)**

Cardiovascular Group P.C. is to produce Dr. Monroe's application for his employment with Cardiovascular Group P.C.  To the extent that Cardiovascular Group P.C. objects to producing Dr. Monroe's application to the Court for inspection in camera.  The issue of whether Dr. Monroe's Application for staff privileges with Erlanger and Memorial Hospital can be discovered under the Tennessee Peer Review

---

[3]The Court notes that the firm of Spears, Moore, Rebman and Williams represents both Cardiovascular Group P.C. and defendant CHCHA.  While attorneys Joseph White and Fred Moore were present at the hearing, there is no evidence that attorneys White and Moore were present in any capacity other than representing the named defendants in the instant litigation.

Law of 1967 is held in abeyance.

During the hearing, the parties were not able to reach agreement as to ¶ 5(b).  However, for the same reasons noted with respect to ¶ 5(a), the Court will not direct non-party Cardiovascular Group P.C. without some assurance that Cardiovascular Group P.C. has been properly subpoenaed in this matter.  Plaintiff may renew his request once he has requested this information through the mechanisms provided under the Federal Rules of Federal Procedure.  If a request invoking the jurisdiction of the Court has already been made, then the plaintiff may file a new motion to compel, based upon that request.  Accordingly, the plaintiff's objection to ¶ 5(b) is **OVERRULED without prejudice.**

O.      ¶ 6

Plaintiff had no objection to ¶ 6.

P.      Summary as to Motions Relating to the November 13, 2007, Order

Accordingly, as set forth above, the plaintiff's objections [Doc. 11] are **SUSTAINED in part** and **OVERRULED in part**; the plaintiff's motions to compel as to party defendants [Docs. 45, 46, 48, 49] are **GRANTED** as set forth above, except to the extent that the Court holds the portion of plaintiff's motion to compel Dr. Shumaker [Doc. 48] relating to the objections raised by Galen Medical Group in **ABEYANCE** until such time as the parties have complied with the Court's directives set forth above; and the plaintiff's motion to compel [Doc. 47] as to Cardiovascular Group P.C. is **DENIED without prejudice**.  Additionally, the Court hereby adopts and incorporates herein Judge Schulten's Order dated November 13, 2007, as amended above.

## III.     Plaintiff's Motion to Compel as to CHCHA [Doc. 53]

In the plaintiff's sixth motion to compel [Doc. 53], the plaintiff moves the Court to compel defendant CHCHA to respond to the plaintiff's Supplemental Requests for Production of Documents and Things. Subsequently, defendant CHCHA provided responses to the discovery request at issue. [Doc. 63, Exhibit 1] Accordingly, the plaintiff's sixth motion to compel [Doc. 53] is hereby **DENIED as moot**. Should the plaintiff believe that further response is required, the parties are **DIRECTED** to first meet and confer as to the disputed responses. Should the parties prove unable to resolve such a dispute, the plaintiff may then file a motion to compel setting forth the basis for any additional response.

## IV.     Motion for Sanctions [Doc. 54]

In his motion for sanctions, the plaintiff moves the Court to sanction defendant CHCHA for its delays in responding to discovery, for providing allegedly insufficient discovery responses, and for taking allegedly inconsistent positions as to the discovery requests. The plaintiff also asks that defendant CHCHA be required to provide full responses to the discovery at issue. Defendant CHCHA opposes the motion, conceding that it was two days late in responding, but otherwise contending that the responses are appropriate and not inconsistent.

On July 25, 2007, the plaintiff served defendant CHCHA with plaintiff's Request for Production. On September 6, 2007, when the matter was still before the Circuit Court of Hamilton County, the plaintiff moved the court to compel defendant CHCHA to respond. On September 14, 2007, defendant CHCHA was ordered to respond to the discovery request on or before October 8, 2007. Defendant CHCHA served its responses on the plaintiff on October 10, 2007. Of the twenty-seven requests for production, defendant CHCHA objected to approximately sixteen, generally

citing lack of relevance, cost, and burden as a basis for the objections.  [Doc. 54, Exhibit D]

The plaintiff contends that, by objecting to the relevancy of these requests, defendant CHCHA is taking a directly contrary position to that previously taken in this litigation by the defendant.  Specifically, the plaintiff contends that on October 14, 2005, attorney Konvalinka propounded a TORA request on CHCHA.  [Doc. 54, Exhibit A]   The October 14, 2005, TORA request addresses many of the same items covered by plaintiff's July 25, 2007, Request for Production.  When CHCHA did not respond to the TORA request, Mr. Konvalinka filed a petition with the Hamilton County Chancery Court seeking enforcement of the TORA request.  Pursuant to that petition, a hearing was held on November 29, 2005, during which Mr. Lewis, counsel for CHCHA, testified.  [Doc. 54, Exhibit B]  The plaintiff cites to six pages of the transcript from the November 29, 2005, hearing in support of his argument that the defendant has materially altered its position as to the relevance of the discovery requests at issue.  The Court will briefly summarize the testimony presented on the cited transcript pages.[4]

On page 92 of the transcript, Mr. Lewis states that items six (regarding peripheral vascular credentialing requirements) and eight (regarding evaluations of Erlanger's credentialing procedures) of what is presumably the October 14, 2005, TORA request, "might be subject to peer review." [Doc. 54, Exhibit B at p. 92]  On page 93 of the transcript, Mr. Lewis  agrees that TORA requests

---

[4]The Court notes that the page numbers on several of the transcript pages provided to the Court are partially obscured, so page references, in some instances, represent the Court's best effort at reading partial page numbers.  The Court also notes that, based upon plaintiff's brief, the October 14, 2005, TORA request contains at least one additional page, if not more, than the two pages filed with the Court.  [Compare Doc. 54 at p. 5 (citing ¶ 12 of the October 14, 2005, TORA request), with Doc. 54, Exhibit A (containing two pages which end with ¶ 10)]  The Court is able to resolve the motion without the missing page(s), but merely notes the discrepancy for the record.

dated March 25, 2003, and August 8, 2003, could not be related to the Stratienko litigation, because the Stratienko case had not even been filed at that time. [Id. at p. 93]  In response, Mr. White, also defense counsel for CHCHA, addressing the judge, notes that "all these things have now been made relevant - not all these things, but a lot of these things have now been made relevant to the Stratienko case, and I don't know how we can separate what the Court has stayed and what the Court has not stayed." [Id.]  The Court notes that Mr. White did not state which items were, or were not, relevant, and further notes that this comment was elicited in regard to the TORA requests of March 25, 2003, and August 8, 2003, copies of which were not included with the plaintiff's motion.

On pages 94 and 95, Mr. Moore states that "the letters having to do with Dennis Pettigrew and/or Jim Brexler, depending on who happened to write those letters, may be relevant in that case," and goes on to say that "[i]t is clear that everything in this request, whether it was 2003 or otherwise, is a product of an investigation in that case, and, therefore, stayed." [Id. at pp. 94-95]  On page 98 of the transcript, Mr. Lewis testified that, based upon the amended complaint, presumably in the Stratienko litigation, "issues relating to . . . contracts and financial relations with other cardiology groups are part of the Stratienko case." [Id. at p. 98]

Finally, on page 105 of the transcript, Mr. Lewis testified that he believed that item 12 (regarding indemnification of the chief medical officer) is related to the Stratienko litigation. [Id. at p. 105]  Mr. Lewis further testified that the medical staff bylaws as of September 16th "would appear to be related since that was the - - I believe that was the date that the summary suspension was imposed." [Id.]

With the cited transcript excerpts in mind, the Court now turns to the specific discovery requests on which the plaintiff contends defendant CHCHA has reversed its position.  The Court sets

forth below the requests cited by the plaintiff, as well as the associated relevancy objections.

Request 11:

Please produce all current contracts between Erlanger Medical Center and all physician groups which were in effect at any time during the past five (5) years.

Relevancy Objection:

This appears to be nothing more than a "fishing expedition." The period referenced goes back to a time prior to this incident. The Authority objects to the production of these documents on the basis that they are not relevant to this cause of action and will not lead to admissible evidence.

Request 13:

Please produce all agreements between Erlanger Medical Center and foundations such as the Tennessee Medical Foundation, the Internal Medicine Foundation, the Chattanooga Surgical Foundation, and the Orthopedic Foundation.

Relevancy Objection:

The contracts between any foundations and Erlanger do not have anything to do with a peer review matter where one physician hit another physician. There are very few of those contracts and there is no contract between the Tennessee Medical Foundation and Erlanger. Again, this appears to be nothing more than a "fishing expedition" and will not lead to admissible evidence.

Request 15:

Please produce all contracts between Erlanger and Erlanger's Chief of Staff, Vice Chief of Staff, Past Chief of Staff and Secretary which were in effect at any time over the past five (5) years.

Relevancy Objection:

These are standard contracts which exist between Erlanger and the Chief of Staff, Vice Chief of Staff, Past Chief of Staff and Secretary. These documents are not relevant to one physician hitting another physician. Again, this appears to be nothing more than a "fishing expedition" and will not lead to admissible evidence.

Request 27:

Please produce all contracts and correspondence regarding arrangements for the

teaching program between UT College of Medicine both in Memphis and Chattanooga and Erlanger.

<u>Relevancy Objection</u>:

The documents requested will not lead to admissible evidence and represents nothing more than a "fishing expedition." Any contracts or correspondence regarding arrangements with the teaching program have nothing to do with a peer review matter involving Dr. Stratienko hitting Dr. Monroe, and any discipline regarding that incident.

Having examined the transcript excerpts and compared the positions established therein to the positions set forth in the relevance objections referenced by the plaintiff, as well as the other relevance objections set forth in the defendant's response, the Court finds that there is insufficient evidence to prove that defendant CHCHA has impermissibly changed its position as to the relevance, in the evidentiary sense, of the documents requested. Given that the November 29, 2005, hearing was focused on whether Mr. Konvalinka's TORA enforcement action should be dismissed as a backdoor attempt to evade the Tennessee Court of Appeals' stay of proceedings in the Stratienko litigation, the Court finds that the references to relevance, relatedness, and other such phrarses, are meant as argument that the requested items were being sought for use in the Stratienko matter, and thus, argument that the case should be dismissed for being in violation of the stay. There is absolutely no indication that the parties are arguing relevance in the evidentiary sense, nor does the Court interpret their arguments as such. The fact that defendant CHCHA was arguing that the plaintiff was attempting to obtain the information at issue for use in the Stratienko litigation does not prove the evidentiary relevance of the information sought. Thus, the Court does not find that defendant CHCHA has impermissibly changed its stance as to the relevance of the documents requested.

Nor does the Court find the two day delay in responding a sufficient basis for the imposition

of sanctions. While the Court certainly expects parties to comply with its deadlines, the Court does not, in this instance, find that the plaintiff was so prejudiced by a two day delay in receiving the response as to warrant the imposition of sanctions. Given that the plaintiff has not challenged the substance of the relevance objections, and, in fact, has failed to state in any way how the requested documents are relevant, the Court need proceed no further in its analysis.

Additionally, the Court notes that the plaintiff's arguments turn, in part, on the alleged availability of the documents at issue under the TORA. The motion before the Court is for the enforcement of a subpoena, not the enforcement of a TORA request. Evidence requested under a subpoena must either be relevant or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Plaintiff has made no showing of either. Should the plaintiff wish to pursue the documents at issue through the TORA, the TORA provides the mechanisms for doing so, as well as the appropriate judicial remedies. Those remedies do not including attempting to invoke the TORA as a basis for obtaining discovery pursuant to the Federal Rules of Civil Procedure. Accordingly, the Court finds that the plaintiff's motion for sanctions [Doc. 54] is not well-taken, and the same is hereby **DENIED**.

## V. Motions to Quash [Docs. 56, 60]

Finally, the Court turns to the motions to quash filed by Dr. Fisher and Dr. Twiest. Drs. Twiest and Fisher move the Court to quash the plaintiff's subpoena, dated September 24, 2007, and served upon the TPQVO. The plaintiff subpoenaed TPQVO to produce:

> all documents or materials and/or correspondence in your possession
> or control regarding, referencing, or pertaining in any way to Van
> Stephen Monroe, Jr., M.D., Daniel F. Fisher, M.D., and Mel Twiest,
> M.D., including but not limited to any and all applications, resumes,
> curriculum vitaes, etc., that you have in your possession or control for
> Van Stephen Monroe, Jr., Daniel F. Fisher, and Mel Twiest.

[Doc. 56, Exhibit A] The Court notes that only defendants Twiest and Fisher have filed motions to quash, and not defendant Monroe, although the subpoena seeks documents as to all three. Thus, the Court's ruling applies only as to documents relating to Dr. Twiest and Dr. Fisher, but not as to Dr. Monroe. The Court also notes that "ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." Mann v. Univ. of Cincinnati, Nos. 95-3195, 95-3292, 1997 U.S. App. LEXIS 12482, at *13 (6th Cir. May 27, 1997) (quoting 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995)). However, in the instant case, Drs. Twiest and Fisher have alleged a personal right or privilege in the information, and the plaintiff has not challenged their standing to do so. Thus the Court finds that the standing of Drs. Twiest and Fisher to challenge the subpoena against TPQVO is not at issue.

As a basis for their motion, the defendants contend that the discovery request seeks documents that are irrelevant, and further argue that the requested documents are privileged under the TPRS. The plaintiff opposes the motion, arguing that the documents are available under the TORA, and thus that the plaintiff should have the opportunity to determine whether the documents at issue are relevant.

However, as the Court noted above, the fact that the documents at issue may, or may not, be available under the TORA plays no role in this Court's application of the Federal Rules of Civil Procedure. In order to discover the documents at issue by use of federal discovery means and methods (including a subpoena), the documents sought must be relevant, or their production must be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Thus, there must be some basis under the Rules before discovery is appropriate. Plaintiff has failed

to show any such basis. Rule 26 is clear that a party, including the plaintiff herein, may not obtain the documents at issue to determine whether they are relevant. Rather, the plaintiff must show that the documents are relevant, or reasonably calculated to lead to the discovery of admissible evidence, before the Court will require their production. Accordingly, the Court finds that Dr. Twiest's and Dr. Fisher's motions to quash [Doc. 56, 60] are well-taken, and the same are hereby **GRANTED**. The plaintiff's subpoena to TPQVO as to Dr. Twiest and Dr. Fisher is hereby **QUASHED**. Given that there is no challenge to the subpoena before the Court as to Dr. Monroe, the subpoena remains in full effect as to him.

## VI. Conclusion

Accordingly, as set forth more fully above, the defendants' motions for protective orders [Docs. 21, 35, 39, 79] are **DENIED**; the plaintiffs objections [Doc. 11] to the Order of Judge Schulten, Dated November 13, 2008, are **SUSTAINED in part** and **OVERRULED in part**; the plaintiff's motions to compel [Docs. 45, 46, 48, 49] are **GRANTED** as set forth above, except to the extent that the Court holds the portion of plaintiff's motion to compel Dr. Shumaker [Doc. 48] relating to the objections raised by Galen Medical Group in **ABEYANCE** until such time as the parties have complied with the Court's directives set forth above; the plaintiff's motion to compel [Doc. 47] as to Cardiovascular Group P.C. is **DENIED without prejudice**; the plaintiff's sixth motion to compel [Doc. 53] is **DENIED as moot**; the plaintiff's motion for sanctions [Doc. 54] is **DENIED**; and Dr. Twiest's and Dr.Fisher's motions to quash [Doc. 56, 60] are **GRANTED** and the plaintiff's subpoena to TPQVO as to Dr. Twiest and Dr. Fisher is hereby **QUASHED**. The parties

are **ORDERED** to comply with the directives set forth more fully above.

      **IT IS SO ORDERED.**

                                                          **ENTER:**

                                                    __ s/ C. Clifford Shirley, Jr. __
                                                    United States Magistrate Judge