UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ALEXANDER A. STRATIENKO, M.D.,    )
                                   )
            Plaintiff,             )
                                   )        No. 1:07-CV-258
v.                                 )
                                   )
CHATTANOOGA-HAMILTON COUNTY        )        Chief Judge Curtis L. Collier
HOSPITAL AUTHORITY et al.,         )
                                   )
            Defendants.            )

## MEMORANDUM

Defendants Chattanooga-Hamilton County Hospital Authority and Mel Twiest, M.D.

("Twiest") ("Moving Defendants") move for summary judgment[1] and to dissolve the temporary

retraining order ("TRO")[2] (Court File No. 6). In accordance with the following, the Court will

---

[1]Moving Defendants' motion to dismiss is converted to a motion for summary judgment because it presents matters outside the pleadings. *See* Federal Rule of Civil Procedure 12(d).

[2]The Circuit Court of Hamilton County, Tennessee issued the TRO on September 20, 2004, based upon Plaintiff's complaint (Court File No. 70, Exhibit 3). Although both parties still refer to the order which enjoins Plaintiff's summary suspension as a TRO, it appears that terminology is inaccurate. Pursuant to Tennessee Rule of Civil Procedure 65.03(5), a TRO without notice to the other party must expire within fifteen days of being issued. This is similar to the Federal Rule of Civil Procedure 65(b)(2), which limits this time period to ten days. Thus, the September 20, 2004 TRO has long since expired. However, both parties continue to adhere to the terms of the TRO. This may be due to the Court being unaware of a subsequent preliminary injunction being ordered by the state court, pursuant to Tennessee Rule of Civil Procedure 65.04(5); an agreement between the parties; or other circumstances. Regardless, as both parties, having superior knowledge of the state court proceedings and issues in the case, have treated the injunction of Plaintiff's suspension as a temporary injunction - remaining in force until modification or resolution of the case - the Court will do so as well. *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *see also Nordin v. Nutri/Sys., Inc.*, 897 F.2d 339, 343 (8th Cir. 1990) (A temporary restraining order, where it has no expiration date on its face and exceeds the ten-day limit, must be treated as a preliminary injunction.); *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 943 (7th Cir. 2006) (A temporary restraining order was appealable as a

**DENY** the Moving Defendants' motion (Court File No. 6).

## I.     FACTS

On September 16, 2004, there was an altercation between Plaintiff Alexander A. Stratienko ("Plaintiff") and defendant V. Stephen Monroe, Jr. ("Monroe") (Court File No. 1, Exhibit 1, p. 5). At some point before that date, Plaintiff conveyed concern to defendant Daniel F. Fisher ("Fisher") as to whether Monroe was qualified to serve on a committee which credentialed physicians to place carotid stents, as Plaintiff believed Monroe to lack sufficient experience and credentials (*id.*). When Monroe learned of this conversation, he confronted Plaintiff in the break room (*id.*, p. 6). According to Plaintiff,[3] Monroe, who was standing in the doorway, demanded Plaintiff stop questioning his training and threatened to sue Plaintiff (*id.*). Plaintiff, with one hand, moved Monroe aside and excited through the now-open doorway (*id.*). Monroe immediately reported the incident (*id.*).

Based upon this altercation, a peer review was conducted and Plaintiff was suspended for thirty days (*see* Court File No. 50, p. 2; Court File No. 51, Exhibit B). Plaintiff filed a complaint in state court and obtained a temporary restraining order, which prevented Moving Defendant from continuing Plaintiff's suspension pending resolution of the complaint (Court File Nos. 50, p. 2; 70,

---

preliminary injunction where it was in force for more than twenty days without the consent of the parties).

Therefore, the TRO referred to by Moving Defendants is and will be referred to as a preliminary injunction.

[3]Not surprisingly, each side characterizes the situation differently - particularly the degree of menace Monroe exhibited before and during the confrontation and the force with which Plaintiff moved Monroe out of the doorway. These basic facts are presented here for background purposes, taken from the Plaintiff's Second Amended Complaint (Court File No. 1, Exhibit 1). They are not intended as an endorsement by the Court of any issue of fact.

2

Exhibit 3).  That temporary restraining order lead to the preliminary injunction the Court addresses below (*see supra*, n.2).

## II.      STANDARD OF REVIEW

When a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) presents matters outside the pleadings, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d).  Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).  That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims.  *Celotex*, 477 U.S. at 323.  The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims.  *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323.  In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment.

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.   ANALYSIS

Moving Defendants first seek summary judgment, arguing they are immune from damages resulting from Plaintiff's summary suspension based upon several grounds (Court File No. 8, pp. 14-41).   Second, Moving Defendants move the Court to dissolve the preliminary injunction, enjoining them from executing Plaintiff's summary suspension (Court File No. 8, pp. 10-16).

### A.   Motion for summary judgment

Moving Defendants seek summary judgment, asserting they are immune from damages pursuant to the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11111(a)(1), 11112(a); the Tennessee Peer Review Law, Tenn. Code Ann. § 63-6-219; the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-310(c), and The Chattanooga-Hamilton County Hospital Authority's Medical Staff Bylaws ("Bylaws") (Court File No. 8, pp. 14-41).   In accordance with the discussion below, the Court will **DENY** Moving Defendants' motion for summary judgment (Court File No. 6).

#### 1.   Health Care Quality Improvement Act

In order to promote full and good faith professional review activities in medical facilities, Congress provides immunity from damages to professional review bodies, members, staff, and those who assist the review.   *See* 42 U.S.C. § 11111(a)(1).  However, in order to qualify for this immunity, the professional review action must be taken . . .

(1)      in the reasonable belief that the action was in the furtherance of quality health care,

4

(2)     after a reasonable effort to obtain the facts of the matter,

(3)     after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4)     in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a).

Here, the Court is faced with two issues: (1) was Plaintiff's summary suspension a "professional review action," as defined under the HCQIA; (2) if so, did Plaintiff's summary suspension satisfy the requirements of 42 U.S.C. § 11112(a).

### a.     Plaintiff's summary suspension is a professional review action

A "professional review action" is defined as "an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action." 42 U.S.C. § 11151(9). "Professional review activity" includes "an activity of a health care entity with respect to an individual physician . . . (A) to determine whether the physician may have clinical privileges with respect to, or membership in, the entity . . ." § 11151(10).

Plaintiff's summary suspension affected his clinical privileges. Therefore, Moving Defendant's determination to suspend, and the summary suspension of, Plaintiff were professional

5

review actions, and are thus regulated by the HCQIA.

>    **b.    A reasonable jury could find Moving Defendants did not act reasonably in summarily suspending Plaintiff**

Pursuant to 42 U.S.C. § 11112(a), "[a] professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence."  Thus, a plaintiff has the burden of demonstrating, by preponderance of the evidence, that the requirements of § 11112(a) have not been met in his peer review.  This inquiry as to the reasonableness of a defendant's actions is an objective test; the question is whether there was a sufficient basis for the defendant's actions. "Bad faith" arguments are immaterial to this objective standard.  *See, e.g.*, *Austin v. McNamara*, 979 F.2d 728, 734 (9th Cir. 1992) ("this test will be satisfied if the reviewers, with the information available to them at the time of the professional review action, would reasonably have concluded that their actions would restrict incompetent behavior or would protect patients.")

In the context of a summary judgment motion and for Plaintiff to overcome the presumption of immunity, Plaintiff must demonstrate that a reasonable jury could determine that Moving Defendants did not conduct the relevant peer review actions in accordance with the requirements of 42 U.S.C. § 11112(a).  *See Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25, 32 (1st Cir. 2002) (citing *Austin*, 979 F.2d at 734); *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318, 1333-34 (11th Cir. 1994), *cert. denied* 514 U.S. 1019 (1995).  Because a reasonable jury could determine Moving Defendants' conduct did not satisfy the § 11112(a) requirements, summary judgment predicated on HCQIA immunity is inappropriate.

In taking a professional review action, Moving Defendants must first afford Plaintiff with "adequate notice and hearing procedures" or "such procedures as are fair to the physician under the

6

circumstances." *See* 42 U.S.C. § 11112(a)(3). Here, the incident - an alleged assault by Plaintiff - occurred on September 16, 2004 between 1:00 and 1:30 pm (Court File No. 84, p. 4). The decision to summarily suspend Plaintiff was made no later than 3 pm on that day (Court File No. 84, p. 5), although Moving Defendants assert that decision was "fluid," i.e. subject to change should new information arise (Court File No. 8, pp. 6-7). Regardless, Moving Defendant Twiest informed Plaintiff at approximately 12:00 pm on September 17, 2004 that he would be summarily suspended from clinical privileges until further evaluation (Court File No. 8, p. 6). At that time, Moving Defendant Twiest provided Plaintiff with a copy of a letter dated September 16, 2004, detailing Plaintiff's suspension (*id.*).

Although Plaintiff has the burden to show, by preponderance of the evidence, that Moving Defendants failed to satisfy the requirements of § 11112(a), the Court still views the facts in the light most favorable to Plaintiff - the non-moving party for the purposes of summary judgment. *See Singh*, 308 F.3d at 32. Viewed in the light most favorable to Plaintiff, the facts indicate the decision to summarily suspend Plaintiff was made little more than an hour after the incident occurred (*see* Court File No. 84, p. 5). Even if the Court were permitted to view the facts as interpreted by Moving Defendants, the "fluid" nature of Plaintiff's suspension could be challenged, considering Moving Defendant Twiest carried with him a copy of a letter, dated the day before, detailing Plaintiff's suspension when confronting Plaintiff on the matter for the first time (Court File No. 8, p. 6). A reasonable jury could find that Moving Defendants had at least made a tentative decision to suspend Plaintiff prior to providing Plaintiff with notice or an opportunity to be heard. *See* 42 U.S.C. § 11151(9) (a "professional review action" includes "an action or recommendation of a professional review body.")

Furthermore, a reasonable jury could find Moving Defendants failed to make a "reasonable effort to obtain the facts of the matter." *See* 42 U.S.C. § 11112(a)(2). Drs. Nita Shumaker and Fisher, having been involved in the decision to summarily suspend Plaintiff, have stated at the time they were consulted, they were unaware of the actions of Monroe, the allegedly-assaulted party, before and during the incident (*see* Court File No. 84, pp. 12, 15, 20).[4] Several witnesses have testified Monroe was angry with Plaintiff prior to the altercation, and indeed was actively seeking him out to confront him because Plaintiff questioned his qualifications (Court File No. 84, pp. 7-8). Monroe is alleged to have said he was "going to have to take [Plaintiff] down in public" (*id.*, p. 8). A reasonable jury could find that Moving Defendants did not make reasonable efforts to obtain the facts, where they either completely failed to inquire as to the reason for the altercation, or did so in a manner that failed to uncover relevant facts witnessed by no less than four individuals (*see id.*, pp. 7-8). *See* 42 U.S.C. § 11112(a)(2).

Finally, a reasonable jury could determine Moving Defendants did not take action "in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after [adequate notice and hearing]." 42 U.S.C. § 11112(a)(4). A reasonable jury could find that a person could not reasonably believe that a physician should be suspended from clinical privileges based upon an altercation, the cause of which was unclear or not known, and without informing or questioning that physician until after deciding suspension is, or is likely to be,

---

[4]The Court cautions all parties to assure any and all citations to depositions or supporting documentation are clearly cited, *including where those documents are filed in the record*. Merely citing a document as, for example, "Ables Deposition at 38-39" does not inform the Court where that deposition is. The citation should include the court file number and exhibit number provided in the docket; for example, Court File No. 85, Exhibit B, pp. 38-39. When the document is not already in the record, the citation should include a clear identification of the relevant filing; for example, Plaintiff's Notice (1/22/2008), Exhibit B, pp. 38-39.

8

necessary.

Because Plaintiff has shown, by preponderance of the evidence, that a reasonable jury could find that Moving Defendants have failed to satisfy the requirements of 42 U.S.C. § 11112(a), *see Singh*, 308 F.3d at 32, the Court will **DENY** Moving Defendants' motion for summary judgment predicated on HCQIA immunity (Court File No. 6).[5]

## 2.    Tennessee Peer Review Law

Under the Tennessee Peer Review Law, Tenn. Code Ann. § 63-6-219(d)(1), all hospitals, physicians, and hospital administrators and employees are immune from liability for furnishing information to a peer review committee, and immune from damages resulting from any decision, opinion, or action rendered by such a committee. *See Eyring v. Fort Sanders Parkwest Medical Center, Inc.*, 991 S.W.2d 230, 235 (Tenn. 1999) (hospitals are included in the immunity afforded by the Tennessee Peer Review Law). Members of the peer review committee are presumed to have acted in good faith and without malice.[6] Tenn. Code Ann. § 63-6-219(d)(3). The party seeking to

---

[5]Moving Defendants argue, in passing, that the "adequate notice and hearing" requirement, 42 U.S.C. § 11112(a)(3), need not be satisfied here, because Plaintiff's summary suspension falls under exceptions to this requirement, as provided in §11112(c) (*see* Court File No. 8, p. 13; 99, pp. 9-10, 11). This argument is moot because, as above, Moving Defendants did not satisfy two of the other subsections for the purposes of HCQIA immunity, and thus excuse from satisfying the "adequate notice and hearing" requirement is immaterial.

Furthermore, none of the exceptions applies here. The exception under § 11112(c)(1)(B) applies only to suspensions for periods no longer than fourteen days. Plaintiff's summary suspension was for a thirty-day period (Court File No. 50, p. 2). The exception under § 11112(c)(2) applies "where the failure to take such an action may result in an imminent danger to the health of any individual." Presuming, without deciding, that these exceptions share the same rebuttal presumption found in § 11112(a), Plaintiff has at least provided sufficient evidence that a reasonable jury could determine that there was no imminent danger (*see* Court File No. 84, pp. 5, 9-10, 13, 28).

[6]Where an individual provides information to the review committee, but is not a member of the review committee, that person is immune from liability "unless such information is false and the person providing it had actual knowledge of such falsity." Tenn. Code Ann. § 63-6-219(d)(2).

9

overcome the immunity has the burden of proving bad faith and malice. *Id.* For summary judgment review, as here, the evidence is viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in that party's favor. *Eyring*, 991 S.W.2d at 236.

The Court of Appeals of Tennessee cited seven factors which it considered in weighing whether malice was sufficiently shown. *Eyring v. Fort Sanders Parkwest Medical Center, Inc.*, 1997 WL 294457, *7-8, 1997 Tenn. App. LEXIS 390, *21-22 (Tenn. Ct. App. June 4, 1997), *aff'd*, 991 S.W.2d at 237 (citing P. Rosen, *Medical Staff Peer Review: Qualifying the Qualified Privilege Provision*, 27 Loyola L. Rev. 357 (1993)). These factors are:

1. Malice may be inferred when the complaint originates and is pursued outside the normal quality assurance procedure.

2. Malice may be inferred when stale charges are used.

3. Malice may be inferred by the manner in which the administration handled the initial complaints - was the doctor considered competent until proven incompetent; or was he summarily terminated from the medical staff.

4. Lack of due process is a circumstance from which legal malice may be inferred.

5. Malice should be implied when a physician did not have an opportunity to be meaningfully heard in response to the allegations.

6. Malice may be inferred by the disparate treatment of one doctor as compared to the doctor's colleagues.

7. Malice may be inferred when the severity of the hospital disciplinary action is disproportionate.

*Id.*

---

Whether that information was otherwise provided in good faith or with malice is immaterial. *See Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 353 (6th Cir. 1999); *Logan v. Everett*, 2006 WL 223708, *4, 2006 Tenn. App. LEXIS 169, *11-13 (Tenn. Ct. App. Jan. 27, 2006).

If an individual is a member of the review committee, as here, a showing of bad faith or malice still removes the immunity. *See* Tenn. Code Ann. § 63-6-219(d)(3).

In reviewing these factors, there is some, even though not great, evidence to infer malice based upon the facts currently before the Court, and that evidence - viewed in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor - is sufficient to raise a dispute of material fact.

Based upon the evidence and reasonable inferences drawn in the light most favorable to Plaintiff, five of the seven factors above indicate malice. The first two factors - the origination of the complaint and whether the charges used are stale - do not indicate malice. *See Eyring*, 1997 WL 294457, at *7. The third factor - the manner in which the initial complaint was handled - indicates some bad faith and malice. *See id.* at *7. Within no more than an hour and a half after the incident, Moving Defendants decided to summarily suspend Plaintiff (Court File No. 84, p. 5). Shortly thereafter, Moving Defendant's attorneys drafted a letter to Plaintiff informing him of his suspension (Court File Nos. 8, p. 6; 84, p. 5). The decision to suspend was made prior to any investigation which explored the events leading up to the incident, and to any discussion with Plaintiff concerning the incident (*see* Court File Nos. 8, p. 6; 84, pp. 12, 15, 20). Moving Defendants argue the suspension decision, despite attorneys having already drafted the suspension letter, was "fluid," and subject to change pending a conversation with Plaintiff (Court File No. 8, p. 6). Even if the suspension decision was "fluid," and there is sufficient evidence that a reasonable jury could determine otherwise, assuming Plaintiff was at fault until proven otherwise indicates malice. *See Eyring*, 1997 WL 294457, at *7 (Malice may be inferred where "the doctor was [not] considered competent until proven incompetent.")

The fourth and fifth factors - a lack of due process and meaningful opportunity to be heard - also support an inference of malice. *See Eyring*, 1997 WL 294457, at *8. Here, the decision to

11

suspend Plaintiff was made prior to notifying Plaintiff of the disciplinary inquiry or providing him

notice and opportunity to prepare for a hearing on the matter (*see* Court File No. 8, p. 6). One could

infer malice where Moving Defendants decided to suspend Plaintiff without discussing the matter

with him first. Furthermore, as above, even if the suspension decision was "fluid," Moving

Defendants still determined suspension was likely without first notifying Plaintiff or providing him

with a hearing.

The sixth factor - disparate treatment of Plaintiff in comparison to other colleagues - provides

some basis to infer malice when viewed in the light most favorable to Plaintiff. *See Eyring*, 1997

WL 294457, at *8. Although this sort of incident is fairly rare among adults in a professional

setting, Plaintiff has provided evidence of another physician who grabbed a nurse's arms, leaving

them "hurt and red," and was not summarily suspended for his actions (Court File No. 84, p. 20).

Although this is only one incident and the decision to suspend a physician is very fact-specific, this

does illustrate that Moving Defendants do not summarily suspend a physician based solely upon

engaging in non-consensual, physical conduct with another staff member. Such instances apparently

require further investigation - something which a reasonable jury could determine was not done here.

The seventh factor - disproportionate severity of the discipline in comparison with the

conduct - also provides some basis to infer malice. *See Eyring*, 1997 WL 294457, at *8. Moving

Defendant Twiest and defendant Fisher - another doctor consulted in the disciplinary considerations

- both agreed Plaintiff was not a threat to patients or staff (*see* Court File No. 84, pp. 5, 9-10, 13, 28).

Moving Defendant Twiest instead testified the summary suspension was primarily to prevent

disruption to hospital operation (*id.*, p. 10). However, if that were the case, there is some basis to

infer malice where Plaintiff was summarily suspended to facilitate normal hospital operations, but

12

no action was taken to determine whether Monroe should also be summarily suspended for the same reason (*id.*, p. 20).

The factors above, when applied here, provide a basis to infer malice. This is not a situation where the physician was provided with notification and a meaningful opportunity to respond to the allegations at a hearing, or was summarily suspended only after a reasonable investigation was conducted to determine the facts of the situation. *Cf. Eyring*, 991 S.W.2d at 237; *Curtsinger v. HCA, Inc.*, 2007 WL 1241294, *1, 9-10, 2007 Tenn. App. LEXIS 268, *2, 28-31 (Tenn. Ct. App. April 27, 2007). Because Plaintiff has provided sufficient evidence from which a reasonable jury could infer bad faith and malice, the Court will **DENY** Moving Defendants' motion for summary judgment based upon immunity under the Tennessee Peer Review Law (Court File No. 6).

### 3. Tennessee Governmental Tort Liability Act

The Tennessee Governmental Tort Liability Act provides as follows:

No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403, unless the act or omission was willful, malicious, criminal, or performed for personal financial gain . . .

Tenn. Code Ann. § 29-20-310(c).

All members of boards, commissions, agencies, authorities, and other governing bodies of any governmental entity, created by public or private act, whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such board, commission, agency, authority, or other governing body. Such immunity from suit shall be removed when such conduct amounts to willful, wanton, or gross negligence.

Tenn. Code Ann. § 29-20-201(b)(2).

Moving Defendants argue Moving Defendant Twiest, as well as the Credentials Committee and the Medical Executive Committee, were all functioning in the capacity of agents of Moving

Defendant Chattanooga-Hamilton County Hospital Authority, a governmental authority covered under the Tennessee Governmental Tort Liability Act (Court File No. 8, pp. 39-41). Plaintiff concedes this characterization (*see* Court File No. 84, p. 41).

The Tennessee Governmental Tort Liability Act raises the issues of whether Moving Defendants were negligent or exhibited malice in their actions. *See* Tenn. Code Ann. §§ 29-20-201(b)(2), 310(c). Neither party has endeavored to argue which party has the burden of proof in demonstrating the presence or absence of negligence or malice, or how those terms are defined in relation to the Tennessee Governmental Tort Liability Act (*see* Court File No. 8, pp. 39-41; 84, pp. 40-43). The Court has already determined malice was sufficiently established at the summary judgment stage in relation to the Tennessee Peer Review Law. The Court has found no Tennessee case law clearly defining malice, in the context of the Tennessee Governmental Tort Liability Act, in a manner contrary to this Court's Tennessee Peer Review Law analysis. Furthermore, because the Tennessee Peer Review Law deals specifically with situations of professional review, as here, the Court is persuaded to adopt the malice standard utilized in that more-specific statute. Having determined that Plaintiff's previous showing of malice is sufficient to preclude summary judgment, the Court will **DENY** Moving Defendants' motion for summary judgment based upon immunity pursuant to Tenn. Code Ann. § 29-20-310 (Court File No. 6).

4.      **The Chattanooga-Hamilton County Hospital Authority's Medical Staff Bylaws**

Moving Defendants argue, because the Bylaws provide immunity to damages for peer review actions, Moving Defendants should be granted summary judgment (Court File No. 8, pp. 14-15). The Bylaws are, in pertinent part, as follows:

> No representative of the Health System or medical staff shall be liable to a physician for damages or other relief for any action taken or statement or recommendation made within

14

the scope of his duties as a representative, if such representative acts in good faith and without malice after a reasonable effort under the circumstances to ascertain the truthfulness of the facts and in the reasonable belief that the action, statement, or recommendation is warranted by such facts.

Bylaws, Sec. 5.4-1, Court File No. 6, Exhibit A, document pp. 15-16.

Thus, the Bylaws only provide immunity where a party acts "in good faith and without malice," after a "reasonable effort" was made to ascertain the truth, and upon "reasonable belief" that the action was warranted by the facts (*id.*). As discussed in the previous sections,[7] a reasonable jury could find that the action was taken in bad faith and with malice, reasonable efforts were not made, and it was not reasonable to believe suspension was necessary based upon the facts available at the time the decision to suspend was made. As such, the Court will **DENY** Moving Defendants' motion for summary judgment based upon the Bylaws (Court File No. 6).

## 5. Conclusion

Because Moving Defendants have not sufficiently established and Plaintiff has sufficiently rebutted the immunity under HCQIA, 42 U.S.C. §§ 11111, the Tennessee Peer Review Law, Tenn. Code Ann. § 63-6-219, the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-310(c), and the Bylaws, the Court will **DENY** Moving Defendants' motion for summary judgment (Court File No. 6).

## B. Motion to dissolve preliminary injunction[8]

Moving Defendants also move the Court to dissolve the preliminary injunction issued by the

---

[7]Moving Defendants make no effort to define "good faith," "malice," or "reasonable" in relation to the Bylaws (*see* Court File No. 8, pp. 13-16). As such, the Court applies the definitions under the HCQIA and Tennessee Peer Review Law.

[8]*See supra*, n.2.

15

Circuit Court of Hamilton County on September 20, 2004 (Court File No. 6). Moving Defendants argue (1) the judiciary should not enjoin a summary suspension when it has been determined appropriate by medical experts, and (2) Plaintiff has failed to exhaust his administrative remedies (Court File No. 8, pp. 10-16).[9]

### 1. Deference to peer review

Moving Defendants argue (Court File No. 8, p. 11) the judiciary should allow hospitals and qualified medical experts to determine whether a physician should enjoy clinical privileges, relying heavily upon the decision in *Early v. Bristol Memorial Hospital,* 508 F. Supp. 35, 37-38 (E.D. Tenn. 1980). However, the reasoning in *Early* does not support Moving Defendants' position in this case. In *Early*, a physician's clinical privileges were terminated due to a determination that he was abusing drugs. *Id.* at 37. Based upon the seriousness of this behavior and the obvious risk to patients caused by a physician under the abusive influence of drugs, the *Early* court strongly cautioned against the judiciary substituting its own judgement for that of medical experts concerning "immeasurable harm" that could be suffered by patients. *Id.*

In explaining the extent of this deference, the *Early* court continued:

On the one hand, the public must be assured that each member of the medical staff of a hospital is fully competent to practice his profession at such facility; on the other hand, every effort must be made to insure that *no physician will be denied staff-privileges on the basis*

---

[9]Normally, in issuing a TRO or preliminary injunction, or considering whether one already imposed should be modified or dissolved, the Court considers and balances the following four factors: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether a preliminary injunction would cause substantial harm to others; and, (4) whether the public interest would be served by the issuance of a preliminary injunction. *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc). Moving Defendants do not address or dispute whether and in what way these factors weigh against the continuation of the current preliminary injunction.

*of incorrect information or without having been afforded a meaningful opportunity to refute the charges against him.* Each decision must be made with the best interest of the hospital in mind but with a full recognition of the rights of the individual physician. The termination of a physician's staff-privileges is serious business; a single precipitous decision of a medical committee could ruin a budding career.

508 F. Supp. at 38 (emphasis added).

The deference afforded to the factual situation in *Early* is unwarranted here for Moving Defendants' decision to suspend Plaintiff because (1) there is no evidence that Plaintiff poses any risk of harm to any patients (*see* Court File No. 84, pp. 5, 9-10, 13, 28), and (2) evidence exists which indicates Plaintiff's suspension was decided without adequate investigation of the incident, full consideration of what occurred, a meaningful opportunity for Plaintiff to refute the charges, and a clear justification for action as serious as a thirty-day suspension of clinical privileges (*see* Court File Nos. 8, p. 6; 50, p. 2; 84, pp. 5, 12, 15, 20). *See Early*, 508 F. Supp. at 38.

### 2. Judicial intervention is not premature

Moving Defendants argue any judicial involvement is premature for a variety of reasons (*see* Court File No. 8, pp. 12-16; 99, pp. 4-7). First, Moving Defendants argue the Bylaws permitted Moving Defendants to summarily suspend Plaintiff because "[w]henever a physician's conduct requires that immediate action be taken to protect the life of any patient(s) or to reduce the substantial likelihood of immediate injury or damage to the health or safety of any patient, employee or other person present in the Health System, or to prevent disruption to hospital operation . . . [authorized parties] shall have the authority to summarily suspend the medical staff membership status or all or any portion of the clinical privileges of such physician" (Bylaws, Sec. 4.2-1, Court File No. 6, Exhibit A, document p. 8). Assuming here, as Moving Defendants argue, that the parties are bound by the Bylaws (Court File No. 8, p. 14, n.1), the language of the Bylaws begs the

17

question. As previously discussed concerning the HCQIA, a reasonable jury could still determine that Plaintiff's conduct did not "require" immediate action; that Plaintiff's conduct did not threaten anyone's safety or pose any danger (*see* Court File No. 84, pp. 5, 9-10, 13, 28); and a thirty-day suspension was not necessary to prevent the disruption of hospital operation.[10]

Second, Moving Defendants argue the peer review process must be fully completed prior to any action of this Court, because (1) the injury is only a "threatened injury" until the peer review process is complete, because that process may not result in Plaintiff's continued suspension (Court File No. 8, p. 15); and, (2) "the Court will be unable to analyze the Authority's compliance with HCQIA and the Tennessee Review Law" without the full administrative record (Court File No. 8, p. 13). These arguments, although superficially appealing, fail to grasp the nature of the action here.

Plaintiff's summary suspension, although a preliminary act within the full peer review process, is still, in and of itself, a "professional review action" as defined by 42 U.S.C. § 11151(9) (A "professional review action" is "an action or recommendation by a professional review body which is taken or made *in the conduct of professional review activity* . . . which affects . . . adversely the clinical privileges . . . of the physician.") (emphasis added). Because Plaintiff's summary suspension is, individually, a professional review act, that act must conform to the requirements of 42 U.S.C. § 11112(a) in order to secure the immunity pursuant to § 11111(a)(1). The Court is not

---

[10]Moving Defendant Twiest did testify that Plaintiff was summarily suspended primarily to prevent disruption to hospital operations (Court File No. 84, p. 10). However, Moving Defendants have provided little to no evidence that Plaintiff's continued presence at the hospital did or was likely to disruption hospital operations, or even that such a belief was reasonable at the time of Plaintiff's summary suspension. There is still a material factual issue of whether this requirement is satisfied, particularly where this determination of Plaintiff's likelihood of disrupting hospital operations was made without knowing the full facts of the incident, and without similarly suspending Monroe, who was also involved in the incident and whose presence could thus also disrupt hospital operations.

18

limited to considering only a final act of suspension, but can consider any professional review action within the relevant "professional review activity," which includes modification of a physician's clinical privileges. 42 U.S.C. § 11151(10)(C). This is similarly true under the Tennessee Peer Review Law, which involves "any decision, opinions, actions, or proceedings" of a peer review committee. *See* Tenn. Code Ann. § 63-6-219(d)(1).

As a practical matter, in most instances, individual professional review actions will not be challenged directly, but only as they relate to the sufficiency of the final decision of suspension. However, where, as here, a preliminary professional review action itself leads to a lengthy summary suspension, that action is likely to be challenged and the Court must determine whether it satisfies the requirements for HCQIA immunity.

Thus, in considering Moving Defendants' first argument concerning Plaintiff's summary suspension as only a "threatened injury" (Court File No. 8, p. 15), Plaintiff's summary suspension is an immediate injury and, although the peer review may ultimately conclude that a permanent suspension is not required, the injury sustained by the summary suspension - including loss of wages, tarnishing of reputation, and disruption of patient services - will have already occurred.

Regarding Moving Defendants' second argument concerning the lack of a full peer review record before the Court (Court File No. 8, p. 13), the Court's analysis of Plaintiff's summary suspension, and the potential immunity for that action under 42 U.S.C. §§ 11111(a)(1), 11112(a), requires the Court to consider the efforts and actions of Moving Defendants prior to and at the time of Plaintiff's summarily suspension. This inquiry does not require any information about Moving Defendants' further peer review actions after Plaintiff's summary suspension.

       **3.**       **Relationship between the preliminary injunction and the completion of the peer review process**

Because there seem to be conflicting accounts of the scope and nature of the preliminary injunction in the parties' filings, the Court will address the scope of the preliminary injunction more specifically. The original TRO, leading to the preliminary injunction, is brief (*see* Court File No. 70, Exhibit 3), and provides a unique challenge for this Court to interpret it nearly four years later, out of context with the surrounding circumstances presented to that court in 2004. The TRO itself orders "that Defendants be and hereby are restrained from continuing the suspension of Plaintiff's medical staff privileges at Erlanger Hospital pending a hearing" (*id.*). The Order then sets an evidentiary hearing date for October 5, 2004, one which does not appear to have been held prior to removal to this Court (*see* Court File No. 70, p. 2).

According to Plaintiff, the original TRO anticipated the completion of the peer review process, prior to its reconsideration (Court File No. 84, pp. 36-39). Moving Defendants do not expressly dispute this, but indicate they are in some way precluded from completing this process due to the TRO (*see* Court File Nos. 8, pp. 12-16; 70, p. 3). This is incorrect.[11] Moving Defendants are not precluded from completing their investigations, hearings, or final determination in this matter. The preliminary injunction only precludes Moving Defendants from implementing Plaintiff's summary suspension. Moving Defendants are not enjoined from completing the review process and taking any final action which is deemed appropriate in light of the culmination of that review, which could include a temporary or permanent suspension.

As such, the final decision of the peer review will render the preliminary injunction moot,

---

[11]Plaintiff asserts "the parties agreed to complete discovery prior to any review hearing" (Court File No. 84, p. 36). The parties, by mutual agreement, may have so limited their ability to continue with the peer review process; however, the Court is not aware of such an agreement and knows of nothing on the record memorializing the details of it.

because the final decision will supercede the preliminary one.[12] Thus, if the final decision does not include suspension, there will be no need for a preliminary injunction. If the final decision does include suspension, Plaintiff may wish to file for another TRO or preliminary injunction against the execution of that professional review action - i.e. the final decision to suspend - and the Court will ultimately consider whether that final decision and suspension conformed with the requirements of 42 U.S.C. § 11112(a) to qualify for immunity under § 11111(a)(1), or whether the state statutes or Bylaws otherwise grant Moving Defendants immunity for that final professional review action.

### 4. Summary

Because Moving Defendants have not provided an adequate basis for dissolving the preliminary injunction, the Court will **DENY** Moving Defendants' motion to dissolve the preliminary injunction (Court File No. 6).

## IV. CONCLUSION

Because, at the summary judgment stage, the factual requirements to secure immunity for damages resulting from the professional review action involving Plaintiff's summary suspension, pursuant to the HCQIA, 42 U.S.C. §§ 11111, 11112; the Tennessee Peer Review Law, Tenn. Code Ann. 63-6-219; the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. 29-20-310(c); and, Moving Defendants' Bylaws, have not been satisfied, the Court will **DENY** Moving Defendants' motion for summary judgment (Court File No. 6).

Because Moving Defendants have failed to provide an adequate basis upon which to dissolve the preliminary injunction against enforcing Plaintiff's summary suspension, the Court will **DENY**

---

[12]However, as explained above, the summary suspension is an individual "professional review action" and, if enacted, would cause irreparable harm until the peer review was completed.

Moving Defendants' motion to dissolve the preliminary injunction (Court File No. 6).

An Order shall enter.

/s/ _____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**