UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ALEXANDER A. STRATIENKO, M.D., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHATTANOOGA-HAMILTON COUNTY ) <br> HOSPITAL AUTHORITY, et al., ) <br> ) <br> Defendants. ) | No. 1:07-CV-258 <br> (COLLIER/SHIRLEY) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the referral of the Honorable Curtis L. Collier, United States District Judge, on the Motion to Quash Plaintiff's Subpoena and Notice to Take Deposition [Doc. 213] of subpoenaed parties Tennessee Medical Foundation and Roland Gray, M.D., V. Stephen Monroe, Jr., M.D.'s Motion to Quash [Doc. 235], and the plaintiff's Motion to Compel. [Doc. 244] On September 22, 2008, the parties appeared before the Court for a hearing on the instant motions. Attorney John P. Konvalinka appeared on behalf of the plaintiff, attorneys Joseph R. White and Fred H. Moore appeared on behalf of defendant Erlanger, attorney Stephen D. Gay appeared on behalf of defendant Twiest, attorneys J. Bartlett Quinn and Nathaniel S. Goggans appeared on behalf of defendant Monroe, attorney Leah M. Gerbitz appeared on behalf of defendants Mutter, Fisher, and Shumaker, and attorney David L. Steed appeared on behalf of subpoenaed parties Tennessee Medical Foundation ("TMF") and Dr. Gray. After the hearing, the Court took the motions under advisement and they are now ripe for adjudication.

**I.   TMF and Dr. Gray's Motion to Quash Plaintiff's Subpoena and Notice to Take Deposition [Doc. 213]**

Subpoenaed parties TMF and Dr. Gray move the Court to quash the plaintiff's subpoena and notice of deposition, served by the plaintiff on July 29, 2008. The subpoena and notice commanded Dr. Gray to appear for a deposition on August 19, 2008, and also commanded him to produce "[a]ny and all documents relating to Alexander Stratienko, M.D. in [his] possession." [Doc. 213-2] The parties agreed to delay the deposition and execution of the subpoena to allow the Court time to hear Dr. Gray's motion.

As grounds for his motion to quash, Dr. Gray argues that any testimony or documents he might provide were received in conjunction with Dr. Gray's role as Medical Director for TMF, an organization which serves as an impaired physician peer review committee, and he thus argues that such testimony and documents are protected from discovery by Tennessee's peer review privilege, codified at Tennessee Code Annotated § 63-6-219. Dr. Gray further argues that, prior to the instant case's removal to this Court, the Circuit Court for Hamilton County quashed a similar subpoena served by the plaintiff on Dr. Gray on the basis of the peer review privilege. [Doc. 213-3] Additionally, Dr. Gray avers that he is "unaware of having any knowledge relating to Dr. Twiest or Dr. Stratienko that would not fall within the statutory prohibitions against disclosure and exemption from discovery." [Doc. 215 at ¶ 6] The plaintiff, Dr. Monroe, and Dr. Twiest all oppose the motion, arguing that the state privilege does not apply in federal court. The plaintiff further argues that the defendants have listed Dr. Gray as a trial witness, and thus the plaintiff is entitled to depose Dr. Gray to determine the scope of his expected trial testimony.[1]

---

[1]The plaintiff has also listed Dr. Gray as a "may call" witness. [Doc. 198]

2

As the Court noted in its Order of August 24, 2008 [Doc. 259], in light of the federal questions raised by the plaintiff in this matter, Rule 501 of the Federal Rules of Evidence mandates that federal, not state, privilege law controls in this case. In that same Order, the Court held that there is no federal peer review privilege, and that the Court must therefore apply a balancing test to determine whether the Court should apply the state privilege in this instance. [Doc. 259 at 6-8]

In support of his position that the Court should recognize a state privilege, Dr. Gray relies on a 1999 case from the Eastern District of Tennessee, Kennedy v. Dermatology Associates of Knoxville, P.C., 3:97-CV-534, slip op. (E.D. Tenn. Oct. 20, 1999). In that opinion, Magistrate Judge Murrian applied Tennessee's peer review privilege and granted the TMF's motion to quash. However, in an earlier opinion in that case, Kennedy v. Dermatology Associates of Knoxville, P.C., 183 F.R.D. 619, 621 (E.D. Tenn. Feb. 22, 1999), Magistrate Judge Murrian held that "Jurisdiction in this case is based upon the citizenship of the parties and is not in controversy. 28 U.S.C. § 1332. Therefore, pursuant to Fed. R. Evid. 501 the substantive law of privilege of the State of Tennessee applies in this case." Kennedy, 183 F.R.D. at 621. As the instant case is before the Court under the Court's federal question jurisdiction, and not diversity jurisdiction, thus changing the application of Rule 501, the Kennedy case is inapposite. Therefore, the Court proceeds with the application of the previously established balancing test to the facts and circumstances surrounding Dr. Gray's deposition.

As the Court found in its previous Order, "[t]he purpose of Tennessee's peer review statute is to candidly and objectively evaluate and review a physician's professional conduct, competence, and ability to practice medicine. It goes without saying that confidentially of peer review committee proceedings is important to the process." In re DOJ Subpoena Duces Tecum, No. 04-MC-018 DV,

3

2004 U.S. Dist. LEXIS 26153 at *5 (W.D. Tenn. 2004). Thus, Tennessee's peer review privilege does promote a very important interest, one which the Court will not lightly disregard. However, as the Court also noted in its previous Order, the parties have a compelling need to obtain probative evidence in this matter.

The balance in this circumstance is further affected by the fact that Dr. Twiest is willing to waive any privilege as to his conversation with Dr. Gray. Similarly, plaintiff's counsel stated at the hearing that if the plaintiff intended to present evidence at trial as to Dr. Stratienko's conversation with Dr. Gray, counsel would alert opposing counsel and would waive the privilege as to that communication. In light of the parties' positions, coupled with the need to obtain probative evidence in this matter regarding the actions of Dr. Twiest and others on or about September 16, 2004, as such actions relate to the plaintiff, the Court finds that the Court should not apply Tennessee's peer review privilege in this instance, as the need for probative evidence in this matter outweighs the interest promoted by the privilege. Accordingly, Dr. Gray's motion [Doc. 213] is **DENIED in part**, to the extent that the Court will not, in this instance, recognize Tennessee's peer review privilege as to the conversation between Dr. Gray and Dr. Twiest that occurred on or around September 16, 2004, as it relates to the plaintiff and the events at issue in this case.

In addition, with regard to a later conversation between the plaintiff and Dr. Gray, the plaintiff shall have ten days from the entry of this Order (and prior to any deposition of Dr. Gray) to advise opposing counsel as to whether the plaintiff may present any evidence at trial as to the September 2004 conversation between the plaintiff and Dr. Gray. Should the plaintiff indicate that he may seek to introduce such evidence, then the Court will not recognize the privilege as to the conversation between the plaintiff and Dr. Gray as such conversation relates to the events at issue

4

in this case. Should the plaintiff indicate that he will not rely on such evidence, then the court will recognize and enforce Tennessee's peer review privilege as to the conversation between the plaintiff and Dr. Gray. Additionally, the Court will allow the plaintiff to make limited inquiry at the deposition of Dr. Gray to determine whether Dr. Gray had any conversations with any other parties to this lawsuit relating to the events of September 16 and 17, 2004, at issue in this matter. Such inquiry shall be limited to ascertaining whether Dr. Gray did, or did not, have any such conversations, and if so, with whom. In the event that Dr. Gray did have such conversations with other parties to the litigation, the parties may then seek leave of the Court to inquire into the nature and details of those conversations, but the Court would necessarily need to hear argument as to the circumstances surrounding such conversations so that the Court could apply the proper balancing test. Any evidence obtained from Dr. Gray, whether testimonial or documentary, shall be deemed to fall within the scope of the Protective Order [Doc. 160] entered in this matter as "Confidential Information." The parties may also make general inquiry into non-privileged matters, including the five numbered items set forth in the defendants' response. [Doc. 221] Dr. Gray's motion is **GRANTED in part**, to the extent that any discovery as to Dr. Gray is limited as set forth above.

II. **Dr. Monroe's Motion to Quash [Doc. 235] and Dr. Stratienko's Motion to Compel [Doc. 244]**

Dr. Monroe moves the Court to quash a subpoena served by the plaintiff upon CardioVascular Group, P.C. ("CVG") on September 5, 2008. The subpoena seeks the production of: all applications for employment of Dr. Monroe; the personnel file of Dr. Monroe; and any and all applications for staff privileges filed by, or on behalf of, Dr. Monroe with any hospital or medical facility including, but not limited to, Erlanger, Memorial, Memorial Northpark, Parkridge, and Hutcheson Medical Center. [Doc. 235-2] The subpoena required that the documents be produced

on September 17, 2008. On September 12, 2008, the Chief Executive Office of CVG, Paul Farmer, through counsel, submitted an affidavit in response to the request. [Doc. 244-3] The affidavit states that: CVG has no responsive documents as to the request for employment applications; and that Dr. Monroe's personnel files consists of the following documents: employment agreement; shareholder agreement; 401k information; insurance election information; payroll documents; disability insurance policy(s); life insurance policy(s); and medical malpractice insurance policy(s). The affidavit further states that CVG was in possession of Dr. Monroe's application for staff privileges at Erlanger, but that CVG would await the Court's ruling on pending motions before producing either Dr. Monroe's application to Erlanger for staff privileges or his personnel file. That same day, the Court entered an Order staying execution of the subpoena to allow the Court time to hear argument on the instant motion. [Doc. 236]

In support of his motion, Dr. Monroe argues that the information sought by the plaintiff is not relevant to the litigation and that the information is protected by Tennessee's peer review privilege. Dr. Monroe further argues that he has a personal right and interest in the application, and thus has standing to oppose production of the documents. The plaintiff opposes Dr. Monroe's motion and has filed a motion seeking to compel CVG to produce the documents in question. The plaintiff argues that CVG has not complied with the subpoena and has not sought the Court's intervention, and thus should be compelled to produce the documents. The plaintiff further argues that the discovery sought is relevant, is not protected by the Tennessee peer review privilege, and thus should be produced.

Rule 45 of the Federal Rules of Civil Procedure provides, in pertinent part, that

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the

6

> subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>
>> (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
>>
>> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(c)(2)(B). Rule 45 further provides that "[o]n timely motion, the issuing court must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).

In the instant case, CVG is the subpoenaed party, but it is Dr. Monroe who filed the motion to quash. As the Court held in its Order [Doc. 143] dated May 7, 2008, "ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." Mann v. Univ. of Cincinnati, Nos. 95-3195, 95-3292, 1997 U.S. App. LEXIS 12482, at *13 (6th Cir. May 27, 1997) (quoting 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995)). Given that the information at issue was prepared and submitted at the request of Dr. Monroe, and given that the documents at issue contain personal information as to Dr. Monroe, the Court finds that Dr. Monroe does have a personal right or privilege as to the documents, and thus he does have proper standing to challenge the production of the documents at issue. Thus, the Court must determine whether the discovery at issue is proper under the Rules.

7

The Court begins its analysis with the relevance of the discovery at issue. Rule 26 of the Federal Rules of Civil Procedure states, in pertinent part, that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. See Lewis v. ACB Business Services, Inc., 135 F.3d 389, 402 (6th Cir. 1998). Nevertheless, discovery does have "ultimate and necessary boundaries," and "discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Because of the extremely private nature of personnel files, courts generally do not order production of such files except upon a compelling showing of relevance by the requesting party. Miller v. Federal Express Corp., 186 F.R.D. 376, 384 (W.D. Tenn. 1999). To be compelling, the requesting party must demonstrate that the value of the information outweighs the privacy interests of the affected parties. Onwuka v. Federal Express Corp., 178 F.R.D. 508 (D. Minn. 1997). While not binding on this Court, the Court finds these cases persuasive and appropriate in this matter.

In the instant case, CVG has stated that it does not possess any documents responsive to the plaintiff's request for applications of employment. CVG cannot produce documents it does not possess, and there has been no showing that would cause the Court to doubt its assertion. Thus, the Court need not further address that portion of the request.

8

Case 1:07-cv-00258   Document 262   Filed 09/25/08   Page 8 of 12   PageID #: 3645

The Court turns next to the plaintiff's request as to Dr. Monroe's personnel file. After considering the arguments of counsel and the evidence of record, the Court finds that the plaintiff has not made a compelling showing that the request as to the personnel file is relevant to any claim or defense at issue in this litigation or that any value such request might have outweighs Dr. Monroe's privacy interest. During the September 22, 2008, hearing, the parties stated that Dr. Monroe became associated with CVG in approximately 2002. The events in question occurred in 2004. There is no evidence before the Court that the employment agreement and shareholder agreement would contain any information relevant to the events at issue in this lawsuit. Nor is there any evidence that the plaintiff's insurance elections would provide any relevant evidence.

Similarly, any information obtained from Dr. Monroe's payroll, 401k records, and insurance policies would provide no relevant evidence. The plaintiff argues that such records might provide evidence as to some conspiracy between the defendants, evidenced by special payments received by the defendants. However, the fact that the defendants may, or may not, have received benefits, benefits which were not made available to Dr. Stratienko, would not, standing alone, "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rather, the plaintiff would necessarily be required to examine the payroll records of other doctors at Erlanger to determine whether any other doctors received similar payments, or whether only the doctors in the alleged conspiracy received the benefits in question. Given that this litigation has been proceeding for four years, and in the absence of a showing by the plaintiff that the evidence at issue is actually relevant, not just that it might possibly be relevant, the Court will not allow such discovery, and the accompanying satellite litigation such discovery would entail, as to the personnel files of non-

9

parties, nor as to the personnel files of the parties to this litigation. Given that the primary focus of this case is on the altercation between the plaintiff and Dr. Monroe, and his subsequent suspension, the Court finds that the plaintiff has not made a showing sufficient to allow the plaintiff to discover the contents of Dr. Monroe's personnel file, contents which, at least in some part, predate the events at issue.[2]

Nor does the Court find that Dr. Monroe's application for staff privileges at Erlanger would provide any relevant evidence. There is no evidence before the Court that the application would shed any light as to the facts and circumstances of the confrontation at issue or plaintiff's subsequent suspension. Again, the plaintiff cannot state that the application is relevant, only that it might be relevant, and the Court will not open the door to a fishing expedition through such private and personal material.

In so ruling, the Court recognizes that the parties might find a dissonance between the Court's refusal to recognize Tennessee's peer review privilege in this matter while at the same time enforcing the confidentiality of the personnel files, and related documents, of parties to the litigation. However, the Court refused to recognize the peer review privilege in this matter because the evidence to which the Court allowed discovery is directly relevant to the issues in this case, the events surrounding the suspension of the plaintiff. There is no showing that the documents at issue in this motion share a similar relevance, and certainly not a compelling showing of relevance, but rather the documents at issue appear to be irrelevant to the conflict and suspension at issue.

---

[2]In response to such a ruling, the Court often hears argument that a document need not be relevant if it is reasonably calculated to lead to the discovery of relevant or admissible evidence. Such arguments are misplaced. Any evidence sought must be relevant, though it need not be admissible at trial if it is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

Accordingly, the Court finds that the documents in Dr. Monroe's personnel file and his application for staff privileges at Erlanger are not relevant to this case. In the absence of relevance, the Court need not proceed with its analysis as to the issues of privilege, as evidence must first be relevant before discovery can be had. Accordingly, Dr. Monroe's motion to quash [Doc. 235] is hereby **GRANTED** and the plaintiff's motion to compel [Doc. 244] is hereby **DENIED**. The subpoena served by the plaintiff on CVG is hereby **QUASHED**.

### III. Discovery Deadline

The Court notes that the discovery deadline in this matter is currently set for September 30, 2008. During the September 22, 2008, hearing, the parties sought leave to extend the discovery deadline as to any depositions scheduled or noticed or subpoenas issued prior to the hearing. As grounds, the parties stated that several depositions had been noticed for the end of September, but that scheduling conflicts would necessarily delay some of the depositions at issue. The parties all agreed to a short extension of the discovery deadline as to matters previously noticed or subpoenaed. In light of the agreement of the parties, and for good cause shown, the discovery deadline in this matter is hereby extended to **October 31, 2008**, but only as to any discovery requests served, noticed, or subpoenaed prior to the September 30, 2008, discovery deadline.

### IV. Summary

In summary, Dr. Gray's motion to quash [Doc. 213] is hereby **GRANTED in part** and **DENIED in part**, as set forth above. Dr. Monroe's motion to quash [Doc. 235] is hereby **GRANTED** and Dr. Stratienko's motion to compel [Doc. 244] is hereby **DENIED**. The subpoena

11

served by the plaintiff on CVG is hereby **QUASHED**.  The discovery deadline is hereby extended to October 31, 2008, but only as to any discovery requests served, noticed, or subpoenaed prior to the September 30, 2008, discovery deadline.

**IT IS SO ORDERED.**

                     **ENTER:**

                       s/ C. Clifford Shirley, Jr.
                     United States Magistrate Judge