UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ALEXANDER A. STRATIENKO, M.D. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:07-CV-258 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| CHATTANOOGA-HAMILTON COUNTY | ) | |
| HOSPITAL AUTHORITY and MEL | ) | |
| TWIEST, M.D., individually and in his | ) | |
| official capacity as Chief Medical Officer of | ) | |
| Chattanooga-Hamilton County Hospital | ) | |
| Authority, V. STEPHEN MONROE, JR., | ) | |
| M.D., MITCHELL L. MUTTER, M.D., | ) | |
| DANIEL F. FISHER, M.D., and NITA | ) | |
| SHUMAKER, M.D. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM</u>**

Before the Court are (1) a motion for attorney's fees and costs or, in the alternative, motion

for relief from judgment filed by Defendant Dr. V. Stephen Monroe (Court File No. 528) and

supporting memorandum (Court File No. 531), and (2) a motion for attorney's fees by Defendants

Drs. Daniel F. Fisher, Mitchell L. Mutter, and Nita Shumaker (Court File No. 534) and supporting

memorandum (Court File No. 535). Plaintiff Dr. Alexander A. Stratienko ("Plaintiff") has filed

responses to these motions (Court File Nos. 536, 538, 539) and Defendants have replied (Court File

Nos. 537, 540, 541).[1] After considering these memoranda, for the following reasons, the Court will

---

[1]Plaintiff first responded to Drs. Fisher, Mutter, and Shumaker's motion with a three-page response challenging the timeliness of the motion, but not addressing any of its merits (Court File No. 536). Apparently realizing these Defendants' motion was timely filed, Plaintiff then filed a "supplemental" response (Court File No. 539) which Defendants labeled a "second bite of the apple" (Court File No. 541). Ordinarily, this Court does not entertain supplemental briefs without prior approval, "except that a party may file a supplemental brief of no more than five (5) pages to call to the court's attention developments occurring after a party's final brief is filed." E.D.TN. LR

**DENY** Defendants' motions for attorney's fees, and will **DISMISS** Dr. Monroe's counterclaims against Plaintiff.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

The Court has stated the factual history of this lengthy and contentious litigation elsewhere (*see, e.g.*, Court File Nos. 192, 230, 516) and adopts those facts in deciding the instant motions. To briefly summarize, on September 16, 2004, Plaintiff was involved in an altercation with Dr. Monroe after Dr. Monroe confronted Plaintiff because Plaintiff had publicly questioned Dr. Monroe's medical credentials to insert carotid stents. The parties do not dispute that Plaintiff made some sort of uninvited physical contact with Dr. Monroe, who was standing in the doorway of Erlanger Medical Center's ("Erlanger") break room as Plaintiff attempted to exit the room. Dr. Monroe reported the incident to Dr. Mel Twiest, Erlanger's chief medical officer. Dr. Twiest spoke with witnesses to the incident as well as other physicians on the hospital's Medical Executive Committee (Court File No. 312 Ex. E (Twiest dep. p. 178)). Based on his investigation and the other physicians' recommendations, Dr. Twiest summarily suspended Plaintiff's hospital privileges for thirty days pursuant to Erlanger's medical staff bylaws. Plaintiff met with Dr. Twiest the following day to give his version of the incident. When Dr. Twiest heard nothing in Plaintiff's account that changed his mind, he upheld the suspension (*id.* at 179–80).

In its Memorandum of March 17, 2009 (Court File No. 516), the Court summarized the case's history from that point forward:

---

7.1(d). Neither of these circumstances is present here. The Court will nevertheless consider Plaintiff's supplemental brief because it contains parallel arguments to those made by Defendant Dr. Monroe and incorporates those arguments by reference.

On September 20, 2004, Plaintiff filed a complaint in state court, naming Erlanger and Dr. Twiest as defendants. The same day, Plaintiff obtained a temporary restraining order which prevented Erlanger from continuing Plaintiff's suspension pending resolution of the complaint (Court File No. 70 Ex. 3 (temporary restraining order); No. 113 Ex. B (original complaint)). On May 17, 2005, the Tennessee Court of Appeals ordered a stay of "all proceedings below" pending resolution of an interlocutory appeal (Court File No. 210 Ex. H). The stay lasted approximately two years, until the Tennessee Supreme Court lifted the stay on May 14, 2007 (*id.* Ex. M). On October 4, 2007, Plaintiff filed a Second Amended Complaint in state court adding Defendants Drs. Shumaker, Mutter, and Fisher (Court File No. 1 Ex. 1).[2] The Second Amended Complaint alleged Defendants conspired to restrain Plaintiff's practice in violation of state and federal antitrust laws, federal and state constitutional violations, state breach of contract violations, and state torts such as tortious interference with business relationships.

Defendants unanimously removed the Second Amended Complaint to this Court on October 29, 2007 (Court File No. 1). Defendants filed their motion to dismiss on March 25, 2008, and their motions for summary judgment on December 14, 2008.

(*Id.* at 3–4). On March 17, 2009, the Court granted the Defendants' motions to dismiss and dismissed Plaintiff's non-antitrust claims. Additionally, the Court granted summary judgment and dismissed Plaintiff's federal and state constitutional claims and federal antitrust claims against Defendants. The Court remanded the remaining state law claims to state court.

Plaintiff filed a notice of appeal from the Court's judgment (Court File No. 519), as did Dr. Monroe (Court File No. 529). The Court's decision on the merits is an appealable final judgment notwithstanding the instant, pending motions for attorney's fees. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03 (1988). However, the filing of a notice of appeal does not affect the district court's jurisdiction to consider a post-judgment motion for attorney's fees, *Jankovich v. Bowen*, 868 F.2d 867, 871 (6th Cir. 1989), especially because any appeal of the Court's decision

---

[2]In 2005, Plaintiff applied for and was again granted staff privileges at Erlanger to run for two years (Court File No. 50 Ex. B). In early 2008, Plaintiff's privileges were renewed, conditioned on the outcome of this litigation (Court File No. 210 Ex. N).

regarding attorney's fees may be consolidated with the appeal on the merits, *see In re Ruben*, 825

F.2d 977, 982 (6th Cir. 1987). Accordingly, it is appropriate for the Court to consider the motions

for attorney's fees at this juncture.


## II. DISCUSSION

Both Dr. Monroe and Drs. Mutter, Shumaker, and Fisher move for attorney's fees under the

relevant provision in the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11113, and

under the federal civil rights statute, 42 U.S.C. § 1988. Additionally, Dr. Monroe moves the Court

for relief from judgment on his counterclaims under Fed. R. Civ. P. 60(b).

### A. Attorney's fees under 42 U.S.C. § 11113

The HCQIA attorney fee provision states:

> In any suit brought against a defendant, to the extent that a defendant has met the
> standards set forth under section 412(a) [42 U.S.C. § 11112(a)] and the defendant
> substantially prevails, the court shall, at the conclusion of the action, award to a
> substantially prevailing party defending against any such claim the cost of suit
> attributable to such claim, including a reasonable attorney's fee, if the claim, or the
> claimant's conduct during the litigation of the claim, was frivolous, unreasonable,
> without foundation, or in bad faith.

42 U.S.C. § 11113. The elements for a § 11113 fee award are that "(1) the defendants are among

the persons covered by the HCQIA, (2) the standards set forth in § 11112(a) were followed, (3) the

defendants substantially prevailed, and (4) the plaintiff's claim or conduct during the litigation was

frivolous, unreasonable, without foundation, or in bad faith." *Meyers v. Columbia/HCA Healthcare*

*Corp.*, 341 F.3d 461, 473 (6th Cir. 2003). "Whether a party's claim or conduct is frivolous,

unreasonable, or without foundation is a question committed to the sound discretion of the district

court." *Id.* (citing *Johnson v. Nyack Hosp.*, 964 F.2d 116, 123 (2d Cir. 1992)).

4

Here, there is little dispute that Defendants, by being granted summary judgment and a dismissal of Plaintiff's claims, substantially prevailed. The parties disagree on the first and second elements of the fee award. Dr. Monroe contends he was covered by the HCQIA because 42 U.S.C. § 11112(a)(2) extends to those who give information to a professional review body, and because the Court in its March 17 Memorandum held he was immune. For their part, Drs. Mutter and Fisher contend they were covered by the HCQIA by recusing themselves from the decision on whether to take disciplinary action against Plaintiff, while Dr. Shumaker maintains she undertook Plaintiff's summary suspension pursuant to the HCQIA. Plaintiff, however, argues Dr. Monroe did not provide information to a peer review body—he only completed an incident report and spoke with Dr. Twiest over the phone—and that Drs. Mutter and Fisher cannot claim § 11113 fees because they deny participating in the summary suspension. The parties also vigorously contest whether the requirements of § 11112(a) were satisfied in suspending Plaintiff.

The Court need not decide these issues, however, because it finds the fourth element—whether Plaintiff's claims or conduct were frivolous, unreasonable, without foundation, or in bad faith—dispositive. Dr. Monroe argues Plaintiff brought frivolous claims in that he knew them to be time-barred when he brought them. He points to the Court's ruling in its Memorandum, in which the Court rejected Plaintiff's use of phrases such as "other actions of Defendants" and "including but not limited to" and his arguments based on federal equitable tolling and the stay of proceedings in state court as justifications for tolling the applicable statutes of limitation on his Second Amended Complaint. Plaintiff counters he provided sufficient law to support these bases for his tolling argument. For the purpose of deciding whether he filed a frivolous complaint, Plaintiff is correct. While the Court did not accept Plaintiff's arguments because it found them

5

legally unconvincing, Plaintiff's response to Dr. Monroe's motion to dismiss did contain case law in an attempt to support his argument, and did allege facts which, according to Plaintiff, amounted to continuing wrongful conduct by Dr. Monroe. The fact the Court rejected this argument does not mean it was frivolous. Plaintiff has asserted he did not make this argument in subjective bad faith, and the Court takes this representation as true.

As a further ground that Plaintiff filed a frivolous claim, Dr. Monroe asserts he "clearly" had immunity under the HCQIA and the Tennessee Peer Review Law, Tenn. Code Ann. § 63-6-219, from the outset of the litigation. This argument, however, is foreclosed by *Meyers*, which upheld the district court's reasoning in denying the defendants' motion for costs and fees:

> [I]t was not unreasonable, frivolous, without foundation, or in bad faith for plaintiffs to oppose the LMH Defendants' position on HCQIA immunity. Plaintiffs had valid questions concerning the manner in which the LMH Defendants conducted the professional review of [one of the plaintiffs] and chose to resolve those issues in this Court. As stated above, the fact that Plaintiff did not prevail in no way indicates that Plaintiffs' claims were unreasonable, frivolous, without foundation, or in bad faith.

341 F.3d at 473. The Court finds this same reasoning persuasive in the instant case.

Next, Dr. Monroe argues Plaintiff's conduct in pursuing this litigation warrants attorney's fees. He points specifically to the "scorched earth" mentality with which Plaintiff approached the litigation, his "outrageous amounts of written discovery," and thousands of pages of documents obtained in response to discovery requests. In reviewing this case's extensive history, however, the Court cannot find any instance where Plaintiff was sanctioned for his conduct during discovery.[3] While Plaintiff undeniably pursued discovery aggressively, the Court cannot conclude his discovery

---

[3]On Plaintiff's motion, however, the magistrate judge did impose partial sanctions on Defendant Erlanger for its delay in production of certain materials and spoliation of those materials (Court File No. 325).

Case 1:07-cv-00258   Document 549   Filed 05/27/09   Page 6 of 14   PageID #: 9162

approach was unreasonable or in bad faith where the magistrate judge overseeing discovery saw no violations justifying sanctions. Moreover, while Dr. Monroe claims "Plaintiff also admitted that he was using federal court discovery to obtain information for administrative proceedings, not this lawsuit," he provides no evidence for this charge, and the Court will not base an award of attorney's fees on a guess as to Plaintiff's subjective motives, or on an unsubstantiated comment.

Lastly, Dr. Monroe cites *Sithian v. Staten Island University Hospital*, 734 N.Y.S.2d 812, 816 (N.Y. Sup. Ct. 2001), *aff'd sub nom. Sithian v. Spence*, 750 N.Y.S.2d 783 (N.Y. App. Div. 2002), for the proposition that Plaintiff exhibited bad faith by suing Defendants while the matter was still pending in Erlanger's administrative review process. True, Plaintiff filed his lawsuit before any appeals could be heard by the hospital's Medical Executive Committee or any other hospital body, and the *Sithian* court (applying the HCQIA) found its plaintiff's suit, filed before the hospital board of trustees could complete their review, to be additional evidence of bad faith. *Id.* ("Such a lawsuit sends a chilling effect to the Board of Trustees that any adverse action will result in personal litigation. Doctors who are sufficiently fearful of the threat of litigation will simply not do meaningful peer review."). However, while the HCQIA provides an administrative process for peer review, it does not mandate that aggrieved parties wait for that process to end before attempting to vindicate their rights in court. To adopt an opposite standard would be to close off a valid avenue for relief in the federal courts, even if it arguably diminished the chilling effect on peer review.

Drs. Mutter, Shumaker, and Fisher, for their part, argue Plaintiff's HCQIA claim was frivolous because, as the Court ruled in its March 17 Memorandum, they were immune under the HCQIA. Again, however, Plaintiff did not know these Defendants were immune at the outset of the litigation, and his challenge to their immunity is a legitimate, nonfrivolous claim. *Meyers*, 341 F.3d

7

at 473. It is true, as Defendants argue, that the HCQIA was designed to provide "immunity from damages to professional review bodies, members, staff, and those who assist in the review," and that the HCQIA was intended to curb a flood of antitrust-based suits by losing physicians in peer review proceedings. 42 U.S.C. § 11101; *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 31–32 (1st Cir. 2002). However, while Plaintiff's claim proved legally insufficient, he had a legitimate factual basis, based on the speed at which the suspension took place and the procedures that were followed, to believe the HCQIA's peer review requirements were not met and the individual Defendants were not immune. *See Muzquiz v. W.A. Foote Mem'l Hosp., Inc.*, 70 F.3d 422, 432–33 (6th Cir. 1995) (upholding denial of attorney's fees where plaintiff had legitimate factual basis for bringing claim based on statements made to him and delay in processing his application for privileges); *but see Smith v. Ricks*, 31 F.3d 1478, 1487–88 (9th Cir. 1994) (upholding award of HCQIA attorney's fees because plaintiff "offered nothing but unsupported allegations").

A court must carefully distinguish between claims it ultimately finds unmeritorious, and claims that are frivolous from the outset. Here, though the Court concluded Plaintiff's claims lacked merit, Plaintiff stated those claims by relying on existing precedent and references to the record. While the Court ultimately did not agree with Plaintiff's characterization of the facts and legal arguments, this alone does not render his claims frivolous. For these reasons, an award of attorney's fees under § 11113 would be inappropriate.

### B.    Attorney's fees under 42 U.S.C. § 1988

Dr. Monroe claims he is entitled to attorney's fees under § 1988 because Plaintiff's § 1983 claim did not allege Dr. Monroe was a state actor and was time-barred. Drs. Mutter, Shumaker, and Fisher move for § 1988 fees on the grounds Plaintiff sued them after they had recused themselves

8

from any action against him, and because the suit was time-barred. In response, Plaintiff asserts he had a good faith basis for believing his equal protection and due process rights were infringed, that he had a sufficient basis for maintaining his suit was timely, and that he alleged Dr. Monroe conspired with Erlanger (a state actor) and hence Dr. Monroe was an appropriate defendant under § 1983.

The civil rights attorney fee statute provides, in relevant part, that in an action to enforce § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Under this statute, attorney's fees are available for prevailing defendants only "upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994). "Application of these standards requires inquiry into the plaintiffs' basis for bringing suit." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). "[I]n applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978). A "plaintiff should not be assessed his opponent's attorney fees unless the court finds the claim was groundless at the outset or 'that the plaintiff continued to litigate after it clearly became so.'" *Smythe-Cramer Co.*, 754 F.2d at 183 (quoting *Christiansburg Garment Co.*, 434 U.S. at 422).

Dr. Monroe's first ground for attorney's fees is that Plaintiff's failure to allege Dr. Monroe acted under color of state law, a fundamental requirement for § 1983 actions, *see, e.g.*, *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009), rendered his action groundless from the outset. Dr. Monroe

9

is correct that Plaintiff did not specifically allege Dr. Monroe is a state actor. Plaintiff's Second Amended Complaint did allege, however, that Dr. Monroe conspired with all the Defendants, including Erlanger, to suspend him and harm his client base to benefit Defendants (Pl.'s Second Am. Compl. ¶ 44). As Plaintiff points out, Sixth Circuit law in effect when he filed the Second Amended Complaint supports § 1983 liability for a private entity "if it conspired or engaged in concerted action with state actors." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). Because Plaintiff relied on this law, assertion of constitutional claims against Dr. Monroe could not have been frivolous, even if the Court ultimately rejected it. In this regard, the situation differs from a recent case, *Hashem-Younes v. Desert Enterprises, Inc.*, No. 06-CV-15469, 2008 WL 786759 (E.D. Mich. Mar. 20, 2008), which awarded § 1988 fees where the plaintiff knew or should have known that the defendants were not acting under color of state law. There, however, the court so ruled because Plaintiff presented no evidence that the entity defendant received or established any government contracts. *Id.* at *3. Here, by contrast, Erlanger was indisputably a governmental entity,[4] and Plaintiff's allegation Monroe conspired with it was a sufficient basis to plead constitutional violations under § 1983.

Dr. Monroe also argues Plaintiff's § 1983 claim was frivolous because Plaintiff allegedly knew it was untimely from the outset, an argument shared by Drs. Mutter, Shumaker, and Fisher. Specifically, Defendants maintain the allegations in Plaintiff's Second Amended Complaint were frivolous because he asserted them despite acknowledging a one-year statute of limitations applied.

---

[4]This Court has held that Erlanger is a political subdivision of the state of Tennessee, and the office of its trustees is an independent governmental entity. *Ketron v. Chattanooga-Hamilton County Hosp. Auth.*, 919 F. Supp. 280, 283 (E.D. Tenn. 1996) (citing *Chattanooga-Hamilton County Hosp. Auth. v. City of Chattanooga*, 580 S.W.2d 322 (Tenn. 1979)).

10

In reading Plaintiff's response to Defendants' motion to dismiss (Court File No. 210, at 12–13), Plaintiff does admit that "it appears that the statute of limitations pertaining to a constitutional claim [in Tennessee] is one year." However, Plaintiff then goes on to argue that "the Second Amended Complaint was filed within one year of discovery of the involvement of Drs. Mutter, Fisher and Shumaker, when the almost two-year stay entered by the [Tennessee] Court of Appeals is considered." Of course, the Court ultimately rejected this argument in granting Dr. Monroe's motion to dismiss. Nevertheless, this is not a situation where Plaintiff was blithely ignorant of the statute of limitations issue; instead, he acknowledged the leading cases on the issue, then made a good faith argument to attempt to demonstrate why his situation was distinguishable. Even if Plaintiff ultimately proved incorrect, he did cite relevant authority and made a colorable argument for why his case was not precluded by the statute of limitations, which can sometimes be difficult to determine in § 1983 cases. *See, e.g.*, *Gibson v. Ada County, Idaho*, No. CV-08-203-S-BLW, 2008 WL 4889895, at *3 (D. Idaho Nov. 12, 2008) ("Having dismissed this case based on the applicable statute of limitations, which when applied to § 1983 cases can be somewhat difficult to interpret, the Court does not find that [plaintiff's] claim was unreasonable, frivolous, merciless [sic] or vexatious.").

Lastly, Drs. Mutter and Fisher argue Plaintiff's § 1983 claim was frivolous because they recused themselves from any disciplinary action against him long before he filed his Second Amended Complaint. They point to several cases for the common-sense proposition that in the absence of an affirmative obligation, a person cannot be held responsible for something he or she did not do. Plaintiff responds primarily by challenging the validity of the process used to elect those Defendants, claiming they acted without authority because a required quorum was not present at the

11

election of medical staff officers. Without wading into that dispute, the Court notes Plaintiff's Second Amended Complaint alleged an active role played by Drs. Mutter and Fisher in suspending Plaintiff. Plaintiff alleged unwarranted communication to Dr. Monroe of a conversation between himself and Dr. Fisher (Pl.'s 2d Am. Compl. ¶ 17), Dr. Fisher's advice and communication of information to Dr. Monroe even after he said he recused himself (*id.* ¶ 21), and Dr. Mutter's treating Dr. Twiest as a patient (*id.* ¶ 14). The sum of these allegations, while unpersuasive to the Court, shows Plaintiff's grounds for naming Drs. Mutter and Fisher, based on belief and information available to him at the time, were not completely baseless.

Awarding attorney's fees against a losing civil rights plaintiff "is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). While the Court rejected Plaintiff's § 1983 claims as being legally deficient, they were not so wholly without foundation as to be egregious, affording Plaintiff no basis on which to bring his suit. Accordingly, the Court will deny Defendants' motions for attorney's fees under § 1988.

### C.      Motion for Relief from Judgment

In his Amended Answer to Plaintiff's Second Amended Complaint, Dr. Monroe asserted counterclaims for attorney's fees under § 11113 and § 1988 (Court File No. 194, at 7–8). The Court in its Memorandum and Order of March 17, 2009, did not address Dr. Monroe's counterclaims. That omission resulted from an inadvertent oversight on the Court's part given the volume of documents filed in this case. The Court did not intend, as Plaintiff asserts, to dismiss Dr. Monroe's counterclaims. Dr. Monroe has moved for relief from this aspect of the Court's judgment under Fed. R. Civ. P. 60(b)(1) ("On motion and just terms, the court may relieve a party or its legal

12

representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect . . . ."). "The Sixth Circuit has extended Rule 60(b)(1) to encompass mistakes that constitute inadvertent judicial oversight." *Cequent Trailer Prods., Inc. v. Intradin (Shanghai) Mach. Co.*, No. 1:05-CV-2566, 2007 WL 1362457, at *2 (N.D. Ohio May 7, 2007) (citing *Barrier v. Beaver*, 712 F.2d 231, 234–35 (6th Cir. 1983)). Because the Court inadvertently omitted to address Dr. Monroe's counterclaims, it invokes Rule 60(b)(1) for the limited purpose of stating they were not dismissed in the Court's March 17, 2009 Order.

That being the case, Dr. Monroe's counterclaims state the exact same grounds for attorney's fees as his instant motion. Having already decided against awarding attorney's fees on those grounds, it would be redundant for the Court to entertain substantively identical counterclaims. Accordingly, the Court will now **DISMISS** Dr. Monroe's counterclaims.

## III.   CONCLUSION

The Court recognizes this has been a hard-fought, expensive, and protracted litigation, and that Defendants sincerely take issue with Plaintiff's conduct in pursuing it. However, one consequence of the long standing "American rule," whether one thinks it is desirable or undesirable, is that unless there is an egregious case of frivolous, unreasonable litigation, each side will bear its own costs. Because Plaintiff's conduct, though aggressive and pugnacious, did not rise to such an egregious level, the Court holds attorney's fees are unwarranted and will **DENY** Defendants' motions to that effect. The Court will also **DISMISS** Dr. Monroe's counterclaims.[5]

---

[5]The Court notes that Plaintiff has filed a motion seeking attorney's fees in relation to Defendant Erlanger's sanctioned behavior (Court File No. 460). Also, Defendant Erlanger has appealed the magistrate judge's decision on Plaintiff's motion to compel and motion for sanctions

13

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

(Court File No. 388). The Court will address these motions in a separate memorandum and order.

14