UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ALEXANDER A. STRATIENKO, M.D. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHATTANOOGA-HAMILTON COUNTY ) <br> HOSPITAL AUTHORITY and MEL ) <br> TWIEST, M.D., individually and in his ) <br> official capacity as Chief Medical Officer of ) <br> Chattanooga-Hamilton County Hospital ) <br> Authority, V. STEPHEN MONROE, JR., ) <br> M.D., MITCHELL L. MUTTER, M.D., ) <br> DANIEL F. FISHER, M.D., and NITA ) <br> SHUMAKER, M.D. ) <br> ) <br> Defendants. ) | Case No. 1:07-CV-258 <br><br> Chief Judge Curtis L. Collier |

### **MEMORANDUM**

Before the Court are two filings. The first, filed by Defendant Chattanooga-Hamilton County Hospital Authority ("Erlanger") (Court File No. 388), is an objection to a Memorandum and Order entered by United States Magistrate Judge C. Clifford Shirley relating to certain discovery violations in this case (Court File No. 325). Erlanger also filed two supplements to its objection (Court File Nos. 434, 498). Plaintiff Dr. Alexander Stratienko responded to Erlanger's objection and raised his own cross-objection to one of the discovery issues (Court File No. 464). The second filing, filed by Plaintiff, is a motion for attorney's fees in the amount of $22,853.50 (Court File No. 460); the fees claimed relate to the discovery violations Judge Shirley found in his Memorandum and Order. Erlanger responded to Plaintiff's motion for attorney's fees (Court File No. 491) and Plaintiff replied (Court File No. 508). The Court has carefully considered these materials in reaching a decision.

For the following reasons, the Court will **DENY** both Erlanger's and Plaintiff's objections and will **AFFIRM** Judge Shirley's Memorandum and Order. The Court will **GRANT** Plaintiff's request for attorney's fees (Court File No. 460) and **ORDER** Defendant Erlanger to pay Plaintiff's attorney's fees in the amount of $1,000.00.

**I.     RELEVANT FACTS AND PROCEDURAL HISTORY**

Judge Shirley's Memorandum and Order addressed discovery disputes stemming from the incident on September 16, 2004, that formed the basis for this extensive litigation (the "September 16 incident"). As this Court has elsewhere explained, that incident involved an altercation between Plaintiff and Defendant Dr. V. Stephen Monroe. Allegedly, Plaintiff had publicly questioned Dr. Monroe's medical credentials to insert carotid stents. Dr. Monroe confronted Plaintiff in the break room at Erlanger, and Plaintiff is alleged to have made some sort of physical contact with Dr. Monroe, resulting in an investigation by Erlanger's medical staff and Plaintiff's summary suspension.

On September 20, 2004, Plaintiff filed suit in the Circuit Court for Hamilton County, Tennessee, and obtained a temporary injunction reversing his summary suspension. Two days later, Plaintiff's counsel requested any documentation relating to Erlanger's investigation of the September 16 incident. On October 20, 2004, Plaintiff took the deposition of Craig Cummings, the cardiology manager of Erlanger's cardiac cath lab and electrophysiology lab. During the deposition, Plaintiff's counsel requested a copy of notes Cummings had made on his computer regarding the September 16 incident; Cummings provided notes he had made on September 16, but not from any other date. After this deposition, Plaintiff's counsel made other requests for documentation,

including any additional notes from Cummings, as well as the hard drive on the computer of Dr. Mel Twiest (Erlanger's chief of medical staff at the time of the September 16 incident), a telephone log kept by Dr. Twiest's assistant (Pat Eller), and the procedure logs kept in Erlanger's cardiac cath lab.

Plaintiff moved for sanctions and attorney's fees based on Erlanger's allegedly impermissible conduct vis-à-vis each of these four items during discovery (Court File Nos. 292, 309). At the request of Judge Shirley, Erlanger provided additional information reponding to Plaintiff's motion (Court File Nos. 318, 319). On January 15, 2009, after holding a hearing the previous month, Judge Shirley issued the Memorandum and Order in which he found discovery violations by Erlanger as to Cummings's notes, Dr. Twiest's hard drive, and Pat Eller's telephone log (Court File No. 325). Judge Shirley concluded sanctions would be appropriate as a result of these violations. He also found, however, there was no discovery violation as to the cardiac cath lab logs and that sanctions would be inappropriate on that issue. Here, Erlanger objects to Judge Shirley's findings on the first three discovery violations, while Plaintiff objects to Judge Shirley's findings regarding the cardiac cath lab logs.

## II. STANDARD OF REVIEW

On nondispositive matters (such as an award of attorney's fees stemming from discovery violations), a district court reviewing a magistrate judge's order to which objections have been made may only "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 515 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 508 (6th Cir. 1993). The clear error standard requires the reviewing

court, based on all the evidence, to be "left with the definite and firm conviction that a mistake has been made." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985); *Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001). Thus, even if the district court views the evidence differently, it must defer to the magistrate judge's finding if there is no firm conviction a mistake has been made. *See Anderson*, 470 U.S. at 573–74; *EEOC v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 834 (6th Cir. 1997) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

A party must preserve all evidence that it knows or should know may be relevant to any present or future litigation. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). The duty begins with a trigger date, on which a party is put on notice that it has a duty to preserve evidence. *Clark Constr. Group v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005). After the trigger date passes, a party "must not destroy unique, relevant evidence that might be useful to an adversary," *id.* (quoting *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)), including any document "likely to have discoverable information that the disclosing party may use to support its claim or defenses," *id.* (citing Fed. R. Civ. P. 26(a)(1)(A)).[1]

### III.  APPEAL FROM THE MAGISTRATE JUDGE'S ORDER

As to each of the four discovery disputes, the Court has reviewed the evidence Judge Shirley had before him in deciding on Plaintiff's motion for sanctions.

---

[1] In this case, Judge Shirley found the trigger date occurred, at the latest, on September 23, 2004, the date on which Erlanger was served with the original complaint (Court File No. 325, at 5–6.) In their objections, the parties do not dispute the September 23, 2004 trigger date, so the Court will use this date.

4

### A. Cummings Notes

Judge Shirley found it inexcusable that Erlanger knew Cummings had created notes related to the September 16 incident, yet did not produce those notes for another three years. Erlanger objects that Plaintiff's counsel's request was limited only to notes Cummings made on September 16, and that there is no evidence Erlanger intentionally withheld any documents.

When Plaintiff's counsel deposed Cummings on October 20, 2004, the following exchange took place:

> Q    Did you ever write this up?
> A    Write it up as an incident report?
> Q    Anything, in any way. Did you ever make any notes about it, write it up in any form or fashion?
> A    Yes. I've got—I wrote—I keep a journal so as to help me.
>
> ...
>
> Q    [A]nd on this particular date, that is September 16th, you made a fairly detailed journal entry with regard to what you consider to be objective statement that were made, or your observations during the day. Is that a fair statement?
> A    Yes, sir, that's fair. . . .

(Cummings Dep. 26–27, 32–33.) Erlanger argues this portion of Cummings's testimony demonstrates Plaintiff's counsel only asked for notes from September 16, even though he knew Cummings had made additional notes on September 17. The Court disagrees. The fact Cummings made a journal entry on September 16 does not preclude his having made journal entries on dates subsequent to the incident, which certainly would have been relevant in the sense contemplated by Fed. R. Civ. P. 26(b) (material sought in discovery need only be "reasonably calculated to lead to the discovery of admissible evidence"). Judge Shirley concluded Plaintiff's counsel's question whether Cummings wrote "anything, in any way" about the incident meant counsel was searching for any of Cummings's notes about the incident, written on any date. The Court cannot say this was

5

a clearly erroneous conclusion; indeed, it appears to be a reasonable one. Judge Shirley also pointed out that on January 5, 2005, Cummings sent an email to an Erlanger employee involved in "Risk Management" that Cummings possessed notes from September 17 that had not been produced (Court File No. 293 Ex. E). Thus, Erlanger knew about the existence of the September 17 notes as early as the beginning of 2005, but did not produce those notes until Plaintiff filed the Motion to Compel and for Sanctions in October 2008.[2]

Based on all this evidence, Judge Shirley concluded "there is simply no reasonable excuse for Erlanger's four year delay in producing the Cummings notes from September 17, 2004," because in January 2005, the "only reasonable course of action . . . would have been to determine whether the notes from the 17th had actually been produced." (Court File No. 325, at 7.) Judge Shirley also concluded even if Erlanger did not intentionally conceal Cummings's notes from September 17, Erlanger's failure to produce relevant documents "at best, paint a disturbing picture indicative of a systematic failure by Erlanger to meet its discovery obligations." (*Id.* at 13.) Having reviewed the evidence Judge Shirley had before him, the Court cannot say this was a clearly erroneous conclusion. Accordingly, the Court will not disturb Judge Shirley's finding that sanctions were appropriate.

### B. Twiest Hard Drive

---

[2]On September 22, 2004, Plaintiff's counsel sent a letter to Erlanger's counsel which requested "[a]ny documentation of Erlanger's investigation into the alleged incident between Dr. Stratienko and Dr. Monroe on September 16, 2004." (Court File No. 293 Ex. A.) Erlanger argues this letter is "at best ambiguous with respect to the scope of documentation included in the request." (Court File No. 388, at 4.) Given the expansive scope of discovery relevance made clear by Fed. R. Civ. P. 26(b), the Court is hard-pressed to see how such a request was "ambiguous." Erlanger should simply have attempted to locate any documentation its employees made concerning the September 16 incident and, unless that documentation was privileged or otherwise protected from discovery under the Federal Rules, turned such documentation over in response to Plaintiff's request.

6

Case 1:07-cv-00258   Document 556   Filed 07/16/09   Page 6 of 13   PageID #: 9194

Judge Shirley found Plaintiff's counsel requested Dr. Twiest's computer hard drive by letter on two occasions: November 22, 2004 (Court File No. 293 Ex. H), and May 3, 2005 (*id.* Ex. I). On May 12, 2005, Plaintiff filed a motion to compel seeking the hard drive (among other items). Dr. Twiest retired from Erlanger's staff in January 2006, while the motion to compel was pending. (Court File No. 303 Ex. C.) Judge Shirley found that after Dr. Twiest's retirement, his hard drive was reimaged, rendering any information on it unavailable, and any information that was stored on Erlanger's network had also become unavailable. Further, Judge Shirley rejected a potential argument that Erlanger's reimaging of the hard drive fell within the good-faith, safe harbor provision of Fed. R. Civ. P. 37(e), because the reimaging occurred immediately after Dr. Twiest's retirement, and after Erlanger had been on notice, since 2004, that any electronic information on Dr. Twiest's hard drive could be at issue.

Erlanger now objects that it believed the hard drive was no longer needed based on hearings and court orders that took place after Plaintiff's 2004 request for the hard drive. Erlanger points to Plaintiff's counsel's statement, in a September 2007 hearing, in which he stated "I don't know that I need [the hard drive] if you're going to produce [Dr. Twiest's e-mail communications]." (Court File No. 293 Ex. K, at 61.) Erlanger argues this shows Plaintiff's counsel indicated he no longer needed the hard drive. Yet this was the exact argument Judge Shirley rejected; he found Plaintiff's counsel did not waive his request for the hard drive, but instead that he "thought that the hard drive might still be helpful, though he might not need it based on other discovery." (Court File No. 325, at 9.) This Court also rejects this argument based on the same reasoning Judge Shirley employed. Particularly given that Plaintiff had requested the hard drive as early as November 2004, and Erlanger waited until a statement made in a September 2007 hearing to argue Plaintiff waived its

7

hard drive request, the Court is unpersuaded by Plaintiff's argument.

Therefore, Judge Shirley did not clearly err in finding Erlanger did not produce the hard drive after numerous requests, that any information contained on the hard drive was likely lost, and that as a result, sanctions against Erlanger were appropriate. Accordingly, the Court will **DENY** Erlanger's objection on this issue.

### C. Eller Phone Log

Regarding the Eller Phone Log, Judge Shirley determined these facts: Dr. Twiest testified during his October 22, 2004 deposition that his assistant, Pat Eller, maintained a log of incoming telephone calls. Dr. Twiest described the log as "one of those little notebook things that many receptionists have where there's a white piece they fill out and give to you and a pink piece they keep." (Court File No. 293 Ex. O, at 151.) Plaintiff's counsel requested "that particular time sheet" from the day in question; Erlanger's counsel said he did not possess it on the day of the deposition, but agreed to furnish it to Plaintiff's counsel at their next meeting. (*Id.*) On November 22, 2004, Plaintiff's counsel requested Dr. Twiest's phone records and a copy of Dr. Twiest's computer hard drive. (*Id.* Ex. H.) On May 3, 2005, Plaintiff's counsel renewed his request for Dr. Twiest's hard drive as well as for the Eller Log. (*Id.* Ex. I.) Plaintiff filed a motion to compel in Hamilton County Circuit Court on May 12, 2005, which sought the Eller Log (among other materials). Over two years later, on November 13, 2007, the Hamilton County Circuit Court granted Plaintiff's request to compel production of the Eller Log, and directed that "Erlanger is to ascertain whether Pat Eller maintained a log or record of telephone calls received on September 16, 2004." (Court File No. 66 Ex. 1.) To date, Erlanger has not produced a telephone log.

In objecting to the Memorandum and Order, Erlanger argues that it has repeatedly

8

maintained Eller never possessed such a log (though Eller did inform Erlanger's counsel, after counsel asked her, that she took telephone messages on a pad). (Court File No. 300 Ex. F ¶ 3.) Yet this explanation does not square with Dr. Twiest's deposition testimony that Eller did, in fact, keep such a telephone log. If Erlanger's counsel thought Dr. Twiest was mistaken, it should have investigated Dr. Twiest's statement immediately after the deposition and informed Plaintiff that Eller had no such log, instead of waiting until a September 2007 hearing (nearly three years after the deposition) to say so. (Court File No. 293 Ex. K, at 50–53.) This appears to be the only time at which Erlanger's counsel informed Plaintiff's counsel of Erlanger's position that no such log existed. Given Erlanger's failure to so inform opposing counsel, Judge Shirley did not clearly err in crediting the evidence Plaintiff presented, which went towards establishing Erlanger personnel knew of the telephone log and possessed it, but did not produce it even when Plaintiff's counsel requested it. Further, given that any such telephone records are currently nowhere to be found, Judge Shirley did not clearly err in awarding sanctions for the spoliation of such evidence.

### D. Cath Lab Procedure Log

Judge Shirley found sanctions concerning an allegedly missing procedure log from Erlanger's Cardiac Cath Lab would be inappropriate, as Plaintiff did not fulfill the requirement of Fed. R. Civ. P. 37(a)(1) "to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." The Rule's text is clear, and even in objecting to Judge Shirley's Memorandum and Order, Plaintiff does not contest the finding it did not fully satisfy the Rule's requirements. Thus, the Court finds Judge Shirley neither clearly erred nor misapplied the law, and the Court will **DENY** Plaintiff's objection on this issue.

### E. Adverse Inference

9

Finally, Erlanger objects to an adverse inference sanction because, it says, "Magistrate Shirley found that there were sufficient grounds to impose an adverse interest [sic] sanction against Defendant Erlanger." (Court File No. 388, at 15.) However, in reviewing Judge Shirley's Memorandum and Order, it does not appear Judge Shirley ordered an adverse inference sanction. Rather, he gave Plaintiff twenty days from entry of the Memorandum and Order to file a motion seeking the imposition of an adverse inference in relation to the destroyed evidence. Plaintiff filed such a motion (Court File No. 403) and Erlanger filed a motion for extension of time to file a response (Court File No. 501), but Judge Shirley did not rule on any of these filings. In any event, a decision on an adverse inference sanction is unwarranted now because the Court has dismissed the case on summary judgment (Court File Nos. 516, 517), a decision from which the parties have appealed. Should the United States Court of Appeals for the Sixth Circuit reverse this Court's decision, the Court would address the adverse inference sanction on remand. But because for now, there is no order imposing an adverse inference for the Court to decide upon, Erlanger's objection will be **DENIED AS MOOT**.

IV.     **PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

Having affirmed Judge Shirley's conclusion that attorney's fees and associated expenses related to the making of Plaintiff's motion would be appropriate, the Court is next confronted with Plaintiff's request for such fees and expenses (Court File No. 460). Plaintiff requests a total amount of $22,853.50, asserting this is the amount of expenses and fees stemming from preparing the court filings related to the instant discovery violations. Erlanger objects to this amount, contending it is excessive and accounts for duplicative work. The Court has considered Plaintiff's claims for fees

10

and expenses and has examined the affidavits Plaintiff has submitted to support his claimed amount.

As the Court noted in its memorandum granting summary judgment, "this litigation has been costly and time-consuming for all involved." (Court File No. 516, at 1.) At this point, filings in the case have consumed over 550 docket entries. The lion's share of the expenses has resulted from Plaintiff's aggressive approach to litigating this case. While there is no question Erlanger committed discovery violations for which it should be sanctioned, the Court also finds the expenses for additional, post-violation discovery would not have been nearly as high as they were had Plaintiff not engaged in his pugnacious (albeit permissible) tactics. The Court is highly reluctant to encourage a scorched-earth approach to ligitation by any party (not just Plaintiff or his counsel) in the future. Accordingly, the Court will not award Plaintiff the full amount requested, but a lower amount.

In making this reduction, and in determining an appropriate amount for sanctions, the Court is mindful that though its award of attorney's fees is reviewed under a deferential abuse of discretion standard, *see, e.g.*, *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 760–61 (6th Cir. 2005), federal appeals courts have nevertheless found an abuse of discretion in situations where a party requested a given amount of attorney's fees, and the district court then reduced the actual amount it ordered as sanctions. *See, e.g.*, *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 399–400 (6th Cir. 2009) (holding it was an abuse of discretion for the district court to reduce monetary sanctions to $2,500 and $250 where defendants' reasonable attorney's fees were $29,294.87 and $3,747.37 respectively, because the district court's award was insufficient to meet the deterrence goals of Fed. R. Civ. P. 11); *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (remanding for reconsideration where the district court failed to explain why it

11

refused to award expenses requested under Fed. R. Civ. P. 37). The language of Rule 37(c), under which Judge Shirley decided sanctions against Erlanger were appropriate, provides a court "*may* order payment of the reasonable expenses, including attorney's fees, caused by the failure" to provide information in discovery. Fed. R. Civ. P. 37(c)(1)(A) (emphasis added). The ability to sanction discovery misconduct under Rule 37 serves a deterrent function. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam); *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998).

Here, the Court recognizes that as under Rule 11, the discretionary ability to award sanctions under Rule 37 also serves to deter parties from discovery misconduct. The Court thus imposes a monetary award to Plaintiff for precisely that reason: to discourage potential litigants in this district from secreting discovery evidence or otherwise rendering that evidence impossible to recover. However, the need for specific deterrence is sharply diminished by the fact this litigation concluded when the Court dismissed all but some of Plaintiff's state law claims on summary judgment. Erlanger's discovery violations do not appear to have tainted the entire litigation; rather, they appear to have happened only as to the three discrete pieces of evidence identified by Judge Shirley. In light of the entire record, those three pieces of evidence would have been of *de minimis*, if any, value in the Court's decision to dismiss Plaintiff's claims. Therefore, though Plaintiff suffered a harm through Erlanger's discovery violations, Plaintiff's request for nearly $23,000 in recouping the expenses related to that harm exceeds the deterrence goal of Rule 37.

The Court concludes a sanction of $1,000.00 from Erlanger to Plaintiff is appropriate. The Court has considered higher and lower amounts, and has concluded a lower amount would be insufficient to fulfill Rule 37's deterrent purpose, while a higher amount would be excessive to

12

accomplish that purpose. Further, a $1,000 award is based on the Court's knowledge of the prevailing costs of litigation in the Eastern District of Tennessee. The Court is satisfied this amount is sufficient, but not greater than necessary, to deter potential litigants in this district from committing similar discovery violations in the future. Accordingly, the Court will **GRANT** Plaintiff's request for attorney's fees (Court File No. 460) and **ORDER** Defendant Erlanger to pay Plaintiff's attorney's fees in the amount of $1,000.00.

## V. CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's and Erlanger's objections to Judge Shirley's Memorandum and Order (Court File No. 325) and will **AFFIRM** that Memorandum and Order. The Court will **GRANT** Plaintiff's request for attorney's fees (Court File No. 460) and **ORDER** Defendant Erlanger to pay Plaintiff's attorney's fees in the amount of $1,000.00.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**